OFFICE COPY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SABRE GLOBAL TECHNOLOGIES LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>HAWAIIAN AIRLINES, INC.,<br><br>Defendant. | Case No. **22 CV 07395**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Sabre Global Technologies Limited ("Sabre"), by and through its undersigned attorneys, brings the following claims against Defendant Hawaiian Airlines, Inc. ("Hawaiian"), based upon knowledge with respect to its own acts and upon information and belief as to all other matters, and states as follows:

### NATURE OF THE ACTION

1. This case concerns Hawaiian deliberately breaching its commitments under a heavily negotiated, ▮▮▮ Distribution Services Agreement with Sabre (the "Agreement"), in a way that maintains all of the benefits of the bargain for Hawaiian, while stripping the core benefits of the Agreement from Sabre. For Hawaiian, having ▮▮▮ access ▮▮▮ ▮▮▮ to Sabre's ultra-efficient global distribution system ("GDS")—and the hundreds of thousands of travel agents who subscribe to Sabre's GDS—was a critical component of the Agreement. And for Sabre, because of Hawaiian's large share of flights to, from, and within the

state of Hawai'i, access to Hawaiian's flights and fares ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ was a principle benefit of its bargain with Hawaiian. Nevertheless, as part of a calculated strategy to renegotiate the Agreement, Hawaiian has breached the Agreement in at least two distinct ways: (i) by withholding inter-Hawaiian island ("inter-island") flights and fares from Sabre ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮; and (ii) by charging a $7 per segment surcharge for bookings through Sabre ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

2. Hawaiian's breaches have had ripple effects throughout the travel distribution ecosystem: they have increased costs to Sabre subscribers (and the traveling public they serve), who must now book inter-island flights through a less-efficient alternative to Sabre and, for all other Hawaiian flights, either pay the $7 per segment surcharge or book through a less-efficient alternative to Sabre. With respect to Sabre, the volume of Hawaiian bookings that would have gone through Sabre's GDS ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ lower than they would have been if Hawaiian—like Sabre—had satisfied its contractual obligations. Hawaiian's breaches have also put Sabre at a competitive disadvantage.

3. Sabre brings this breach of contract action to recover the damages caused by Hawaiian's breaches and to declare that Hawaiian's actions breached the Agreement.

## THE PARTIES

4. Sabre is a private limited company incorporated under the laws of England and Wales, with its principal place of business in Richmond, England, United Kingdom.

5. Hawaiian is a public corporation incorporated in Delaware, with its principal place of business in Honolulu, Hawai'i.

## JURISDICTION AND VENUE

6. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) because there is diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. Venue is proper in this Court because 

## STATEMENT OF THE FACTS

**I.   The Agreement**

8. Hawaiian has a large market share of flights to and from the state of Hawai'i, and it dominates the market for inter-island flights.

9. Sabre and its corporate affiliates operate a technological platform called a GDS that connects travel agencies with travel suppliers, including airlines. Sabre's GDS connects more than 425,000 travel agents with more than 400 airlines, 175,000 hotel properties, 40 car rental brands, and many other travel suppliers. Sabre's GDS provides value to travel agencies by, among other things, acting as a "one-stop shop" for travel agencies to search, comparison

3

shop, book, and service air and other travel itineraries. On the other side of the GDS platform, Sabre provides value to airlines by, among other things, enabling them to market and distribute their flights and fares instantaneously to the hundreds of thousands of travel agents who subscribe to Sabre's GDS.

10. The travel agents who subscribe to Sabre's GDS depend on Sabre having stable, long-term contracts with airlines that guarantee the airlines will provide access to the largest possible quantum of content (e.g., airlines' flights and fares) through Sabre. This is because those travel agents' customers – that is, travelers – need their travel agency to be able to book flights quickly and efficiently, and the quickest and most efficient way for travel agencies to search for, book, and service travel is by using a GDS.

11. The Agreement between Hawaiian and Sabre took effect on ▬▬▬, and terminates on ▬▬▬. Sabre and Hawaiian negotiated the terms of the Agreement for months before it took effect. The Agreement's ▬▬▬ term provides valuable certainty and stability to both parties, along with the ability to avoid engaging in more frequent, prolonged negotiations that unnecessarily drain resources from both parties.

12. Pursuant to the Agreement, Hawaiian pays Sabre ▬▬▬



▬▬▬ Hawaiian leveraged its high market share for flights to and from Hawai'i, as well as its dominance of the inter-island market, to obtain ▬▬▬.

13. As part of the Agreement, Hawaiian and Sabre ▬▬▬

4

14. For example, Sabre promised ███████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████ Sabre has lived up to these — and each of its other — contractual commitments to Hawaiian.

15. For its part, with limited exceptions not applicable here, Hawaiian promised:
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████

16. The specific provisions in the Agreement ███████████████
█████████████████████ are as follows:
█████████████████████████████████
███████████████████████████████████████████
█████████████████████████████████

5

███████████████████████████████████████

d.   As Hawaiian is — or should be — aware from the negotiating history of this term, the Agreement ███████████████████████████████████

███████████████████████████████████████

6

███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

## II. Hawaiian Breached the Agreement by Withholding Flights and Fares from Sabre ███████████████ and by Charging a Surcharge to Sabre Subscribers

18.     Effective May 31, 2022, Hawaiian implemented a new distribution policy, which: (i) prevents Sabre subscribers from accessing Hawaiian's inter-island flights and fares through Sabre, and (ii) levies a $7 per segment surcharge on US-based travel agencies that book any Hawaiian flights through Sabre. This policy breaches, among others, Hawaiian's commitments under ███████████████ of the Agreement.

19.     As Hawaiian announced, effective May 31, 2022, "[f]ares for travel wholly within the Hawaiian islands . . . [are] no longer [] available" to travel agents using certain distribution systems, including Sabre.[1] Rather, Hawaiian informed travel agencies that, beginning May 31, 2022, they can only access inter-island flights and fares through the HAChannel+ program. Among other options, the HAChannel+ program allows travel agencies to access inter-island flights through third-party distributors — described in more detail below — that Hawaiian has labeled "HA Connect Approved Partners."

---

[1] A letter to travel agents announcing this policy is available on Hawaiian's website at: https://salesforce-cm-v1-d1.prod.aws-usw2.hawaiianair.com/HA%20Connect/Hawaiian%20Airlines%20Distribution%20Strategy%20Update%20June%206.pdf. The policy is available at: https://haconnect.hawaiianairlines.com/s/ha-channel-plus.

20. On information and belief, since May 31, 2022, at least ▮ Sabre subscribers and/or Sabre subscriber locations have lost access to Hawaiian's inter-island flights and fares through Sabre.

21. Also effective May 31, 2022, Hawaiian began to apply a $7 surcharge for each ticketed segment booked through certain distribution systems, including Sabre. As Hawaiian advised travel agencies, to avoid the surcharge, they must access Hawaiian's flights and fares through the HA Channel+ program, including through the third-party "HA Connect Approved Partners."

22. On information and belief, at least ▮ Sabre subscribers and/or Sabre subscriber locations have faced surcharges when booking Hawaiian's flights through Sabre.

23. As a result of Hawaiian pulling inter-island flights and fares from Sabre and imposing surcharges on bookings through Sabre, the quantity of Hawaiian bookings made through Sabre's GDS and the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ have decreased substantially. Sabre estimates that Hawaiian's breaches—individually and collectively—have caused the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, as well as Sabre's related profits, to decrease by substantially more than $75,000. Sabre has also been put at a competitive disadvantage for travel agency business.

24. On information and belief, since Hawaiian implemented its new distribution policy on May 31, 2022, Hawaiian has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ These distribution systems include at least Aaron Group, AirGateway, APG, ClarityTTS, Duffel,

NuFlights, Onriva, Thomalex, TideSquare, TPConnects, Travelfusion, TWAI, Verteil, and Ypsilon.net AG.[2]

25. On information and belief, each of these distribution systems 

 a. **Aaron Group.** On information and belief, "[o]ver 100 travel agencies worldwide use [Aaron Group's] Symphony Hub," which aggregates the content of "400 I GDS airlines."[3]

 b. **Air Gateway.** On information and belief, Air Gateway provides travel agencies with a "Web NDC Agency Desktop Tool," which "[c]urrently provides access to more than 25 NDC-enabled airlines."[4]

---

[2] Hawaiian published this list of "HA Connect Approved Partners" on its website at: https://haconnect.hawaiianairlines.com/s/approved-partners.

[3] Aaron Group published this information at: https://www.aarongroup.com/en/one_stop_booking_platform_for_travel_consultants (last visited Aug. 26, 2022).

[4] Air Gateway published this information at: https://airgateway.com (last visited Aug. 26, 2022).

c.  <u>APG</u>. On information and belief, APG works "with over 200 airline clients across all distribution models" to "provide truly global coverage" for airline distribution to travel agencies.[5]

d.  <u>ClarityTTS</u>. On information and belief, ClarityTTS offers an API product to travel agencies that has "the data of numerous airlines consolidated and integrated into a single search and booking engine."[6]

e.  <u>Duffel</u>. On information and belief, Duffel operates a "Flights API," which allows travel agents to "[o]ffer flights from 300+ airlines from all major distribution channels: NDC, GDS, and LCC."[7]

f.  <u>NuFlights</u>. On information and belief, NuFlights provides airlines and travel agencies a "single content platform," where airlines and agencies can "publish and consume Air content from GDS and non-GDS carriers," including "leading airlines."[8]

g.  <u>Onriva</u>. On information and belief, Onriva is a "travel marketplace" that uses a "travel distribution system [that] include[s] searching for flights for airlines using new distribution capability (NDC) standards, global distribution system (GDS) network, or using Application program interface (API) or websites."[9]

---

[5] APG published this information at: https://www.apg-ga.com/about-us.html (last visited Aug. 26, 2022).
[6] ClarityTTS published this information at: https://www.claritytts.com/en/products/clarity-travel-api (last visited Aug. 26, 2022).
[7] Duffel published this information at: https://duffel.com/flights-search (last visited Aug. 26, 2022).
[8] NuFlights published this information at: https://www.nuflights.com (last visited Aug. 26, 2022).
[9] Onriva published this information at: https://www.onriva.com/#why-onriva (last visited Aug. 26, 2022).

h. <u>Thomalex</u>. On information and belief, Thomalex is a "travel management system" that provides travel agencies access to "Multi GDS, NDC Content, Low Cost Carriers, [and] Charters," among other content sources.[10]

i. <u>TPConnects</u>. On information and belief, TPConnects operates a "marketplace" that allows travel agencies to "[s]earch for competitive fares from a vast range of airlines."[11]

j. <u>TravelFusion</u>. On information and belief, TravelFusion operates "a single platform allowing" travel agencies to "search, shop, book, merchandise, pay, & service bookings seamlessly across 370+ LCCs & 42+ NDC airlines."[12]

k. <u>TWAI</u>. On information and belief, TWAI operates AccessOne RES, which unifies content "ranging from GDS/CRS, wholesalers, consolidators, LCCs, [and] direct connects" in "a single platform" for travel agencies.[13]

l. <u>Verteil</u>. On information and belief, Verteil operates a "[o]ne stop shop" that allows travel agencies to "shop and compare . . . across airlines."[14]

m. <u>Ypsilon.net AG</u>. On information and belief, Ypsilon.net AG operates Flightpro, a "full content one stop booking engine" for travel agencies that "provides access to hundreds of low-cost carriers, charter flights, [and] rail as well as direct connect NDC content."[15]

---

[10] Thomalex published this information at: https://thomalex.com (last visited Aug. 26, 2022).
[11] TPConnects published this information at: https://tpconnects.com (last visited Aug. 26, 2022).
[12] TravelFusion published this information at: https://corporate.travelfusion.com/products-services (last visited Aug. 26, 2022).
[13] TWAI published this information at: https://www.accessone.io/ACCESSONE-API (last visited Aug. 26, 2022).
[14] Verteil published this information at: https://www.verteil.com (last visited Aug. 26, 2022).
[15] Ypsilon published this information at: https://ypsilon.net/product/1/ (last visited Aug. 26, 2022).

11

### III. Hawaiian Knowingly Breached the Agreement

26. Although Hawaiian's breach is clear from the face of the Agreement and Hawaiian's actions, its course of dealing with Sabre makes clear that Hawaiian itself is aware that it has breached the Agreement.

27. █████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████

28. ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████ In addition to containing ████████████████, Hawaiian's proposed amendment changed material parts of ████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████

29. ████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

███████████████████████████████████████████
█████████████████████████

30. Notwithstanding Hawaiian's proposed amendments, and as set forth above, the operative Agreement requires that ████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████

31. ██████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████

**COUNT I (BREACH OF CONTRACT – ████████████████)**

32. Paragraphs 1 through 31 above are incorporated by reference as if fully set forth herein.

33. The Agreement between Hawaiian and Sabre, ████████████ sets forth a valid and binding agreement for Sabre's distribution services.

34. At all times, Sabre performed its obligations under the Agreement.

35. Under the Agreement, Hawaiian agreed that it ████████████████
███████████████████████████████████████████
████████████████████████████

36. Since May 31, 2022, Hawaiian has violated the Agreement by denying US-based Sabre subscribers access to inter-island flights and fares through Sabre, ███████████████ ███████████████████████████████████████████ ███████████████████████.

37. Hawaiian continues to discriminate against Sabre subscribers by denying them access to its inter-island flights and fares when booking through Sabre's GDS.

38. By the acts described above, Hawaiian has materially breached its obligations under the Agreement. As a direct and proximate result of Hawaiian's breach, Sabre suffered and will continue to suffer damages.

## COUNT II (BREACH OF CONTRACT – ███████████████)

39. Paragraphs 1 through 31 above are incorporated by reference as if fully set forth herein.

40. The Agreement between Hawaiian and Sabre, ███████████████, sets forth a valid and binding agreement for Sabre's distribution services.

41. At all times, Sabre performed its obligations under the Agreement.

42. Under the Agreement, Hawaiian agreed to ███████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████.

43. Contrary to the applicable terms of the Agreement, since May 31, 2022, Hawaiian has collected a $7.00 per segment surcharge from Sabre subscribers booking through Sabre █ ███████████████████████████████████████████ ███████████████████████.

14

44. By the acts described above, Hawaiian has materially breached its obligations under the Agreement.

45. As a direct and proximate result of Hawaiian's breach, Sabre suffered and will continue to suffer damages.

### COUNT III (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – [REDACTED])

46. Paragraphs 1 through 31 above are incorporated by reference as if fully set forth herein.

47. New York state law implies a covenant of good faith and fair dealing in all agreements between the parties entered into in the State of New York.

48. Since May 31, 2022, Hawaiian has violated the implied covenant of good faith and fair dealing by denying US-based Sabre subscribers access to inter-island flights and fares through Sabre [REDACTED]

49. Hawaiian continues to discriminate against Sabre subscribers by denying them access to its inter-island flights and fares when booking through Sabre's GDS.

50. As a direct and proximate result of Hawaiian's breach of the implied covenant of good faith and fair dealing, Sabre suffered and will continue to suffer damages.

51. For avoidance of doubt, Sabre pursues this claim in the alternative to Count I.

### COUNT IV (BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – [REDACTED])

52. Paragraphs 1 through 31 above are incorporated by reference as if fully set forth herein.

53. New York state law implies a covenant of good faith and fair dealing in all agreements between the parties entered into in the State of New York.

54. Since May 31, 2022, Hawaiian has violated the implied covenant of good faith and fair dealing by collecting a $7.00 per segment surcharge from Sabre subscribers booking through Sabre ████████████████████████████████████████
████

55. As a direct and proximate result of Hawaiian's breach, Sabre suffered and will continue to suffer damages.

56. For avoidance of doubt, Sabre pursues this claim in the alternative to Count II.

### DEMAND FOR TRIAL BY JURY

57. Sabre demands a trial by jury on all issues that are so triable.

### PRAYER FOR RELIEF

58. WHEREFORE, Sabre respectfully requests that this Court enter judgment:

   a. Declaring that Hawaiian's restrictions on Sabre subscribers accessing Hawaiian's inter-island flights and fares through Sabre, implemented May 31, 2022, materially breached the Agreement

   b. Declaring that Hawaiian's surcharges on Sabre subscribers booking through Sabre, implemented May 31, 2022, materially breached the Agreement.

   c. Awarding Sabre all damages to which it is entitled concerning Hawaiian's breaches of contract.

   d. Awarding costs and such other and further relief as the Court deems just and proper.

DATED: August 29, 2022
       New York, New York

Respectfully submitted,

Evan R. Kreiner
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
One Manhattan West
New York, NY 10001
Phone: (212) 735-3000
evan.kreiner@skadden.com

Steven C. Sunshine
Tara L. Reinhart (*pro hac vice* forthcoming)
SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Phone: (202) 371-7860
steve.sunshine@skadden.com
tara.reinhart@skadden.com

*Counsel for Sabre Global Technologies Ltd.*