

SIDLEY AUSTIN LLP
787 SEVENTH AVENUE
NEW YORK, NY 10019
+1 212 839 5300
+1 212 839 5599 FAX

AMERICA • ASIA PACIFIC • EUROPE

+1 212 839 5543
MCOLON-BOSOLET@SIDLEY.COM

November 21, 2022

Via Electronic Filing

The Honorable Vernon S. Broderick
United States District Court
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

> Application denied without prejudice to renewal.  The parties are directed to Rule 5.B. of my individual rules related to sealing and redactions.  There is a presumption of public access to anything that qualifies as a "judicial document," i.e., a "filed item that is 'relevant to the performance of the judicial function and useful in the judicial process.'"  *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016) (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006)).  The presumption is "at its strongest" when "the information at issue forms the basis of the court's adjudication." *Liberty Re (Bermuda) Ltd. v. Transamerica Occidental Life Ins. Co.*, No. 04 Civ. 5044(NRB), 2005 WL 1216292, at *6 (S.D.N.Y. May 23, 2005) (citation omitted).  Accordingly, on or before December 9, 2022, Defendants are ordered to file a letter motion in further support of their motion to seal, (Doc. 24.) providing supporting case law for their position, including an analysis under *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).

Re:  *Sabre Global Technologies Limited v. Hawaiian Airlines, Inc.,*
     **Case No. 22-cv-7395**

APPLICATION DENIED
SO ORDERED
VERNON S. BRODERICK
U.S.D.J.    11/22/2022

Dear Judge Broderick:

    We write on behalf of Defendant Hawaiian Airlines, Inc. ("Hawaiian") in connection with Hawaiian's Motion to Dismiss Sabre Global Technologies Limited's ("Sabre") Complaint, filed on November 21, 2022 (the "Motion to Dismiss").  Pursuant to the Court's Individual Rules of Practice 5(B)(iii), Hawaiian respectfully seeks leave of court to file certain documents under seal or with redactions, pursuant to a request from Sabre.

    Plaintiff initiated this breach of contract action on August 30, 2022 after seeking leave of court to file the Complaint under seal and file a partially redacted version on the public docket in the miscellaneous action styled *Sabre Global Technologies Ltd. v. Hawaiian Airlines, Inc.*, No. 1:22-mc-00246-PMH.  Hawaiian's Motion to Dismiss is founded on the plain language of the Distribution Services Agreement between Sabre and Hawaiian (the "Agreement"), which is referenced in Hawaiian's Motion to Dismiss and attached to the Declaration in support thereof.  Hawaiian conferred with Sabre, and Sabre confirmed that it maintains that "all references to the terms of the Agreement must be redacted from public view or filed under seal."

    Accordingly, Hawaiian has attached to this letter motion its proposed redactions to the Memorandum of Law in support of the Motion to Dismiss, and a copy of the parties' Agreement to be sealed in its entirety.

    For the foregoing reasons, Hawaiian respectfully requests that the Court grant leave for the proposed redactions and sealing described herein.

Sidley Austin (NY) LLP is a Delaware limited liability partnership doing business as Sidley Austin LLP and practicing in affiliation with other Sidley Austin partnerships.

# SIDLEY

Page 2

Respectfully submitted,

*/s/ Melissa Colón-Bosolet*
Melissa Colón-Bosolet

cc:     Counsel of record (via ECF)

**Error! Unknown document property name.**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

SABRE GLOBAL TECHNOLOGIES
LIMITED,

        *Plaintiff*,

    v.

HAWAIIAN AIRLINES, INC.,

        *Defendant*.

Civil Action No. 22-cv-7395

Judge Vernon S. Broderick

**DEFENDANT HAWAIIAN AIRLINES INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## <u>TABLE OF CONTENTS</u>

Page

I.   PRELIMINARY STATEMENT ..........................................................................................1

II.  STATEMENT OF FACTS ................................................................................................5

   A.   The Agreement.............................................................................................................5

   B.   Hawaiian's Distribution Strategy................................................................................8

   C.   Plaintiff's Complaint....................................................................................................9

III. ARGUMENTS AND AUTHORITIES.............................................................................11

   A.   Plaintiff Has Not Alleged a Breach of the Agreement ...............................................12

     1.   New York Rules of Contract Interpretation...........................................................12

     2.   Plaintiff's Claims Are All Premised on HA Connect Approved Partners ████
       ████ ..........................................................................................................13

     3.   Plaintiff's Conclusory Allegations Fail to Satisfy ████████████████
       ████ ..........................................................................................................14

     4.   Plaintiff's Cited References Further Support That HA Connect Approved Partners
       Do Not Meet the ███████████ ...................................................................18

     5.   Other Provisions of the Agreement Reinforce the ██████████ ............20

     6.   Plaintiff's Allegations Further Support That the HA Connect System ██████
       ██████████████ ..............................................................................21

   B.   Plaintiff's Claims for Breach of the Implied Covenant of Good Faith and Fair Dealing
     Should Be Dismissed as Duplicative ..........................................................................23

IV.  CONCLUSION AND REQUESTED RELIEF .................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accurate Grading Quality Assur., Inc. v. Thorpe*,
  2013 WL 1234836 (S.D.N.Y. Mar. 26, 2013) ........................................................ 11

*Akyar v. TD Bank US Holding Co.*,
  2018 WL 4356734 (S.D.N.Y. Sept. 12, 2018) ....................................................... 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................................... 10, 11

*Atlas Partners, LLC v. STMicroelectronics, Int'l N.V.*,
  2015 WL 4940126 (S.D.N.Y. Aug. 10, 2015) ....................................................... 20

*Berman v. Sugo LLC*,
  580 F. Supp. 2d 191 (S.D.N.Y. 2008) ................................................................... 12

*Brainbuilders LLC v. EmblemHealth, Inc.*,
  2022 WL 3156179 (S.D.N.Y. Aug. 8, 2022) ......................................................... 23

*In re Bristol-Myers Squibb Sec. Litig.*,
  312 F. Supp. 2d 549 (S.D.N.Y. 2004) ................................................................... 11

*Calcano v. True Religion Apparel, Inc.*,
  2022 WL 973732 (S.D.N.Y. Mar. 31, 2022) ......................................................... 16

*Cap. Access Servs. Inc. v. Direct Source Seafood, LLC*,
  2018 WL 3093967 (S.D.N.Y. June 22, 2018) ....................................................... 15

*Chanel, Inc. v. RealReal, Inc.*,
  449 F. Supp. 3d 422 (S.D.N.Y. 2020) ..................................................................... 2

*Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.*,
  773 F.3d 110 (2d Cir. 2014) ................................................................................... 12

*CVC Claims Litig. LLC v. Citicorp Venture Cap. Ltd.*,
  2006 WL 1379596 (S.D.N.Y. May 18, 2006) ....................................................... 18

*Del Glob. Techs. Corp. v. Park*,
  2008 WL 5329963 (S.D.N.Y. Dec. 15, 2008) ....................................................... 19

*Doyle v. Mastercard Int'l Inc.*,
  700 F. App'x 22 (2d Cir. 2017) ............................................................................. 22

ii

*Ergowerx Int'l, LLC v. Maxell Corp. of Am.*,
18 F. Supp. 3d 430 (S.D.N.Y. 2014) ................................................................12, 22

*Gordillo v. 20 E 49 Rest., Inc.*,
2019 WL 1206697 (S.D.N.Y. Mar. 14, 2019) ........................................................17

*Harris v. Provident Life & Accident Ins. Co.*,
310 F.3d 73 (2d Cir. 2002) .....................................................................................22

*Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
530 F. Supp. 3d 447 (S.D.N.Y. 2021) .....................................................................12

*Jill Stuart Asia LLC v. LG Fashion Corp.*,
2019 WL 4450631 (S.D.N.Y. Sept. 17, 2019) ........................................................23

*K. Bell & Assocs., Inc. v. Lloyd's Underwriters*,
97 F.3d 632 (2d Cir. 1996) .....................................................................................12

*Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*,
494 F. App'x 153 (2d Cir. 2012) ............................................................................13

*Kassner v. 2nd Ave. Delicatessen Inc.*,
496 F.3d 229 (2d Cir. 2007) ...................................................................................11

*L-7 Designs, Inc. v. Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011) ...................................................................................11

*Laskowski v. Liberty Mut. Fire Ins. Co.*,
2011 WL 4965454 (N.D.N.Y. Oct. 19, 2011) .........................................................17

*Lia v. Saporito*,
909 F. Supp. 2d 149 (E.D.N.Y. 2012) ..................................................................3, 15

*In re Lipper Holdings, LLC*,
766 N.Y.S.2d 561 (1st Dept. 2003) .........................................................................12

*Lopez v. Arby's Franchisor, LLC*,
2021 WL 878735 (S.D.N.Y. Mar. 8, 2021) .............................................................16

*Mangiafico v. Blumenthal*,
471 F.3d 391 (2d Cir. 2006) .....................................................................................3

*Marans v. Intrinsiq Specialty Sols., Inc.*,
2018 WL 4759772 (S.D.N.Y. Sept. 30, 2018) ........................................................22

*Marolla v. Devlyn Optical LLC*,
2019 WL 4194330 (S.D.N.Y. Sept. 3, 2019) ......................................................12, 23

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*,
    723 F.3d 192 (2d Cir. 2013)...........................................................................................22

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016)...........................................................................................11

*Pu v. Russell Publ'g Grp., Ltd.*,
    2016 WL 9021990 (S.D.N.Y. Sept. 2, 2016)....................................................................15

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008)...........................................................................................11

*Symquest Group, Inc. v. Canon U.S.A., Inc.*,
    186 F. Supp. 3d 257 (E.D.N.Y. 2016) .............................................................................19

*U.S. v. Sabre Corp.*,
    No. 19-cv-01548 (S.D.N.Y. Apr. 3, 2020) ........................................................................3

*V.E.C. Corp. of Delaware v. Hilliard*,
    896 F. Supp. 2d 253 (S.D.N.Y. 2012).......................................................................12, 14

*WestLB AG v. BAC Florida Bank*,
    912 F. Supp. 2d 86 (S.D.N.Y. 2012).................................................................................18

*Williams v. Calderoni*,
    2012 WL 691832 (S.D.N.Y. Mar. 1, 2012) ......................................................................14

Defendant Hawaiian Airlines, Inc. ("Hawaiian") respectfully files this Memorandum of Law in Support of its Motion to Dismiss Plaintiff Sabre Global Technologies Limited's ("Sabre") Complaint (ECF No. 1, the "Complaint"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules") and Local Rule 7.1, for failure to state a claim upon which relief can be granted (the "Motion").  In support of its Motion, Hawaiian respectfully states as follows:

## I.  PRELIMINARY STATEMENT

This dispute is fundamentally about Sabre's attempt to re-write its distribution agreement with Hawaiian into a far broader agreement in favor of Sabre.  Contrary to Plaintiff's assertions, Hawaiian's HA Connect distribution strategy has not "stripp[ed] the core benefits of the Agreement from Sabre."  Sabre is receiving exactly what it bargained for but has instead brought this action, through artful pleading and cherry-picking statements from the Agreement, as a means of extracting additional contractual benefits that Sabre was unable to obtain at the negotiating table.

Hawaiian supplies the travel industry with a schedule of flights that are offered at certain fares.  Hawaiian has several options on how it can distribute these flights to passengers, and it can offer special fares based on the method of booking used.  For example, passengers can (1) book tickets directly on Hawaiian's consumer-facing website, (2) passengers can go to an online travel agency (like Expedia) to reserve tickets themselves, or (3) passengers can work with a brick-and-mortar travel agency, which is often the method of choice for larger businesses that book high volumes of travel.  For travel agencies to sell flights and ancillary products to their clients, they need access to flight data from the airlines.  However, travel agencies often do not have the technology to access this information directly from airlines, so they work with technology companies in order to view this flight data.

Sabre is one such type of technology company, called a Global Distribution System or "GDS," which uses decades-old technology to collect and process flight information and then

distribute this information to a network of subscribers through a comparison-shopping interface where travel agencies can search for flights.  Recently, a new technology standard called "NDC" (New Distribution Capability) has emerged in the airline industry, which, rather than relying on GDS companies to collect, process, and distribute flight products through their network, instead allows the airline to generate their own offers and send them directly to third parties.  Since the emergence of NDC, a new set of technology companies have played a critical role in providing software for travel agencies to connect to NDC airlines that might otherwise not have the ability to do it themselves.  Some of these NDC-focused companies provide travel agencies with the option to connect to numerous NDC airlines and thus are commonly referred to as "NDC Aggregators."

Sabre is a sophisticated company that is deeply enmeshed in the airline industry, possessing a wealth of knowledge of what a "GDS" is and the differences between GDS technology, NDC technology, and the role of "aggregators" in providing airline booking systems to travel agencies. Sabre's principal position in the Complaint—that the thirteen companies identified as "HA Connect Approved Partners" ███████████████████████████—requires Sabre to feign ignorance of the industry, but more fundamentally is devoid of any factual allegations, offering only conclusory assertions about the Approved Partners "on information and belief."  (*See* Compl. ¶ 25.)  Despite the fact that a court in this District recognized that Sabre possesses monopoly power in the United States,[1] Sabre is attempting to convince the Court that it knows

---

[1] *See* Declaration of Melissa Colón-Bosolet ("Colón-Bosolet Decl.") Ex. A (attaching Order for Judgment at 1, *U.S. Airways, Inc. v. Sabre Holdings Corp.*, No. 11-cv-02725 (S.D.N.Y. May 25, 2022), ECF No. 1209).

next-to-nothing about these NDC Aggregators,[2] merely selecting quotes from their public websites

as its only source of knowledge.  Yet Sabre recently took the position in Delaware federal court—

which the court adopted—that Travelfusion, █████████████████████████████, is

a "*non-GDS* Aggregator."[3]  And Sabre's own public statements acknowledge that "GDS" is a very

specific term used only in reference to three companies in the United States:  Sabre, Travelport,

and Amadeus.[4]

    In the Complaint, Sabre purposefully withholds its knowledge about these NDC

Aggregators in order to effectively re-write the ████ Participating Carrier Distribution and

Services Agreement (the "Agreement").[5]  Sabre makes no secret that its claims all stem from

Hawaiian's ███████████████████████████████.  Nevertheless, Sabre's position

---

[2]    Hawaiian's website listing the HA Connect Approved Partners, available at https://haconnect.hawaiianairlines.com/s/approved-partners, as cited by Sabre in Paragraph 24, Footnote 2 of the Complaint, refers to these companies as "NDC Aggregators."  *See* Colón-Bosolet Decl. Ex. B.  On a motion to dismiss, the Court can properly consider websites relied on and cited by Plaintiff in support of its claims.  *See Chanel, Inc. v. RealReal, Inc.*, 449 F. Supp. 3d 422, 429 (S.D.N.Y. 2020) (Broderick, J.) (considering website for purposes of Rule 12(b)(6) motion, where plaintiff "relies extensively" on such website in its pleading).

[3] *See* Colón-Bosolet Decl. Ex. C, Bench Trial Transcript (Vol. C) at 740:12-17 ¶ 16, *U.S. v. Sabre Corp.*, No. 19-cv-01548 (S.D.N.Y. Apr. 3, 2020), ECF No. 256 (trial testimony of Sean Menke, CEO of Sabre, stating that Travelfusion is an example of a "non-GDS aggregator"); *see also* Colón-Bosolet Decl. Ex. D, Opinion at ¶ 80, *U.S. v. Sabre Corp.*, No. 19-cv-01548 (S.D.N.Y. Apr. 8, 2020), ECF No. 277 (holding "FLX OC enables airlines to connect to travel agencies via a non-GDS aggregator, such as Travelfusion.  Distribution through a non-GDS aggregator is another form of GDS bypass").

[4] Indeed, Sabre has represented to other federal courts in recent litigation that only "three companies—Sabre, Amadeus and Travelport—operate GDSs within the United States today."  *See* Colón-Bosolet Decl. Ex. E, Defendant's Proposed Findings of Fact at ¶ 16, *U.S. v. Sabre Corp.*, No. 19-cv-01548 (S.D.N.Y. Feb. 20, 2020), ECF No. 246. The Court may take judicial notice of these statements on a Rule 12(b)(6) motion to establish the fact that Sabre took a contrary position in other litigation.  *See Lia v. Saporito*, 909 F. Supp. 2d 149, 178 (E.D.N.Y. 2012), *aff'd*, 541 F. App'x 71 (2d Cir. 2013) (holding that on a 12(b)(6) motion, the court "may properly take judicial notice of the fact that [plaintiff] made certain statements during his deposition in the administrative proceeding that are inconsistent with the factual allegations in the [plaintiff's] complaint").

[5] Notably, Plaintiff did not even attach the Agreement to its Complaint, likely in an effort to avoid drawing attention to language in the Agreement that undermines its claims, as further described below.  *See* Colón-Bosolet Decl. Ex. F (attaching true and correct copy of the Agreement).  The Court may properly consider the Agreement on a Rule 12(b)(6) motion because Plaintiff's breach of contract claims are premised on the terms of this Agreement.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002)).

is that the Court should read these ███████████████████████████████. In so arguing, Sabre is asking the Court to expand the ███████████████████ far beyond the plain language of the Agreement. But a careful reading of the Agreement reveals that ███████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████ As discussed below, ████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████

Sabre's insistence that the HA Connect Approved Partners should be considered ███████ fundamentally stems from Sabre's resistance to NDC technology that has the potential to render legacy GDS technology less relevant and is unsupported by a plain reading of the Agreement. Hawaiian's new distribution platform, called "HA Connect," favors NDC technology as part of Hawaiian's efforts to modernize the booking process and offer personalized fares and "air ancillaries . . . via modern means of distribution."[6] Sabre's effort to shoehorn NDC Aggregators into ██████████████████████ is clearly aimed at stopping Hawaiian (and any other airline with a similar idea) from working directly with travel agency partners to modernize its retailing capabilities, irrespective of whether Sabre's strategy would harm customers.

The Complaint reveals the underlying commercial issue that Sabre faces: the growing spread of NDC technology, and Hawaiian's HA Connect platform, has "put [Sabre] at a competitive disadvantage for travel agency business." Yet HA Connect, which offers new

---

[6] *See* Colón-Bosolet Decl. Ex. G (Hawaiian's website describing the HA Channel+ system, available at https://haconnect.hawaiianairlines.com/s/ha-channel-plus, as cited by Sabre in Footnote 1 of the Complaint).

technology and incentives to encourage travel agencies to connect directly to Hawaiian, is

███████████████████████████████████████████████████████████ that

Sabre bargained for.  Because Plaintiff has failed to allege sufficient facts to make out a claim for

breach of any provision of the Agreement, the Court should dismiss Plaintiff's claims as a matter

of law.

## II.   <u>STATEMENT OF FACTS</u>

### A.   The Agreement

On ██████████ Plaintiff and Hawaiian entered into the Agreement, which provides, in

relevant part, that Hawaiian will ████████████████████████████████





## B.     Hawaiian's Distribution Strategy

███████████████████████████████████████████████████████████

████████████     ████████     Hawaiian's webpage describing the changes to its distribution strategy states that "HA Channel+ is a new content program that makes all Hawaiian Airlines published fares and air ancillaries available via modern means of distribution." (Colón-Bosolet Decl. Ex. G, at 1.)  Hawaiian's website explains that travel agencies can access the "modern means of distribution"—NDC technology—in three possible ways:

(1) The travel agency, if it has the technological capability, can "connect directly via HA Connect" to Hawaiian's "NDC API technology" to access the HA Channel+ content.

(2) The travel agency can login to Hawaiian's "Partner Portal," a website that enables travel agencies "to access HA Channel+ content and receive similar functionality to their existing platform."

(3) The travel agency can engage an "HA Connect Approved Partner" to "provide API technology to agencies" that do not have the technological capability to connect directly with Hawaiian's NDC API.

(*See id.* at 2.)  Below is an image from Hawaiian's website showing these three methods of connection.



On May 31, 2022, Hawaiian's changes to its distribution strategy took effect, as described in a letter written to travel agencies.[8]  The letter specifies that two modifications would affect "U.S. points of sale that are still using legacy technologies": (1) inter-island fares would no longer be available, and (2) Hawaiian would impose a Distribution Cost Recovery Surcharge ("DCRS") on travel agents that book through legacy channels.  (Colón-Bosolet Decl. Ex. H, at 1; *see also* Compl. ¶ 18–19, 21.)  The letter makes clear that these changes would affect all "legacy technologies" equally, and it specifically mentions Amadeus, Travelport, and Sabre, providing an update on how these three GDSs have been implementing the modifications.  (Colón-Bosolet Decl. Ex. H, at 1.)

### C.      Plaintiff's Complaint

On August 29, 2022, Plaintiff filed the Complaint seeking breach of contract damages. (Compl. ¶¶ 32–58.)  The Complaint contains one central argument—that Plaintiff is entitled to

███████████████████████████████████████████████████████████

████████████  (*See* Compl. ¶ 16.)  Plaintiff alleges that "specific provisions in the Agreement [] ████████████████████████████████████████████████  and  that  █████

███████████████████████████████████████████████████████████

███████████████████████████████████  (*Id.* ¶¶ 16–17.)

Plaintiff only specifically identifies one group of companies that it alleges is getting more favorable flights and fares from Hawaiian:  the "HA Connect Approved Partners."  Plaintiff alleges that "Hawaiian has ████████████████████████████████████████████████

████████████████████████████████████  and that "[o]n information and belief,

---

[8] *See* Colón-Bosolet Decl. Ex. H (letter cited by Sabre in Paragraph 19, Footnote 1, of the Complaint, available at https://salesforce-cm-v1-d1.prod.aws-usw2.hawaiianair.com/HA%20Connect/Hawaiian%20Airlines%20 Distribution%20Strategy%20Update%20June%206.pdf).

each of these distribution systems ██████████████████████████████████

████████████ (*Id.* ¶¶ 24–25.)

Yet when it comes to pleading that Sabre is entitled to ████████████████

██████████████████████████████████, Plaintiff's allegations are only contained

in one paragraph of the Complaint: Paragraph 25. And Plaintiff's allegations are only offered "on

information and belief." Plaintiff first alleges that each of these "distribution systems" (apparently

referring to the HA Connect Approved Partners) ████████████████████████████

████████████████ (*Id.* ¶ 25.) In support of this conclusion, Plaintiff cites the individual

websites of thirteen Approved Partners and quotes selected excerpts from each website describing

the technology solutions offered by each. (*Id.* ¶ 25.) None of the Approved Partners', however,

describe themselves on their websites ████████ (*Id.*) Instead, these companies are described

as offering technology "platforms" compatible with many booking formats. (*E.g.*, *id.* ¶ 25 (f); *id.*

¶ 25 (j).)

Conspicuously absent from the Complaint are any allegations that describe how any one

of the thirteen HA Connect Approved Partners ██████████████████████████████

Plaintiff merely recites █████████████████████████ and concludes that "the Agreement

████████████████████ (*Id.* ¶ 16(d).) Plaintiff also makes no mention of the █████████

██████████████████████████ other than stating ████████████████████████████

████████████████████████████████████████████████ (*Id.* ¶

13.) Tellingly, Plaintiff does not ████████████████████████████████████

████████

For the reasons explained herein, Plaintiff's claims fail to state a breach of any of

Hawaiian's obligations under the Agreement. As such, dismissal is warranted as a matter of law.

## III.   ARGUMENTS AND AUTHORITIES

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotations and citation omitted). A court "may also consider matters of which judicial notice may be taken" in ruling on a motion to dismiss. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . ." *Iqbal*, 556 U.S. at 678 (internal quotations omitted). Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id*.

11

Although a court generally must accept the complaint's factual allegations as true, "[a] court need not feel constrained to accept as truth conflicting pleadings that make no sense, or that would render a claim incoherent, or that are contradicted . . . by statements in the complaint itself." *Accurate Grading Quality Assur., Inc. v. Thorpe*, 2013 WL 1234836 at *8 (S.D.N.Y. Mar. 26, 2013); *see also In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004) ("The court need not accept as true an allegation that is contradicted by documents on which the complaint relies."). "Though a plaintiff may plead facts alleged upon information and belief, where the belief is based on factual information that makes the inference of culpability plausible, such allegations must be accompanied by a statement of the facts upon which the belief is founded." *V.E.C. Corp. of Delaware v. Hilliard*, 896 F. Supp. 2d 253, 259 (S.D.N.Y. 2012) (citations and quotations omitted).

### A. Plaintiff Has Not Alleged a Breach of the Agreement

#### 1. New York Rules of Contract Interpretation

Under New York law,[9] "the initial interpretation of a contract is a matter of law for the court to decide." *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996) (internal quotations omitted). When interpreting an agreement, the court's "primary objective is to give effect to the intent of the parties as revealed by the language of their agreement. The words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co., N.A.*, 773 F.3d 110, 114 (2d Cir. 2014) (internal quotations and citations omitted). Further, New York courts will not interpret a contract "to produce a result that is absurd,

---

[9] The parties do not dispute that █████████████████████████████████

commercially unreasonable, or contrary to the reasonable expectations of the parties." *In re Lipper Holdings, LLC*, 766 N.Y.S.2d 561, 562 (1st Dept. 2003) (internal citations omitted).

Under New York law, for a successful breach of contract claim, a plaintiff must show: (1) the formation of an agreement; (2) performance by one party; (3) breach of the agreement by the other; and (4) damages. *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008); *see also Marolla v. Devlyn Optical LLC*, 2019 WL 4194330, at *3 (S.D.N.Y. Sept. 3, 2019) (Broderick, J.). "Dismissal of a breach of contract claim is appropriate where a contract's clear, unambiguous language excludes a plaintiff's claim." *Ergowerx Int'l, LLC v. Maxell Corp. of Am.*, 18 F. Supp. 3d 430, 440 (S.D.N.Y. 2014) (alteration and citation omitted); *see also Hertz Glob. Holdings, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 530 F. Supp. 3d 447, 454 (S.D.N.Y. 2021), reconsideration denied, 2022 WL 889209 (S.D.N.Y. Mar. 25, 2022) ("The Court may dismiss a breach of contract claim for failure to state a claim if the 'plain language' of the contract contradicts or fails to support the plaintiff's allegations of breach.").

### 2. *Plaintiff's Claims Are All Premised on HA Connect Approved Partners* ██████████

Plaintiff's theory of breach is premised on ████████████—that Hawaiian breached the Agreement (1) by not allowing Sabre access to inter-island flights and fares that are available on HA Connect in violation of ████████████; and (2) by imposing a $7 DCRS on Hawaiian flights booked through Sabre while n████████████████████████ ████████████ (Compl. ¶¶ 36, 43.) ████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████



Because Plaintiff fails to plead sufficient facts showing that either HA Connect or any HA Connect Approved Partner ▮▮▮▮▮ and further, that HA Connect and the Approved Partners ▮▮▮▮▮▮▮▮ dismissal is appropriate here.  *See Karmilowicz v. Hartford Fin. Servs. Grp., Inc.*, 494 F. App'x 153, 157 (2d Cir. 2012) (dismissing breach of contract claim, where complained-of actions were within defendant's "sole, absolute, and exclusive discretion" under the plain language of the contract).

       **3.**        ***Plaintiff's Conclusory Allegations Fail to Satisfy*** ▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, all of which Plaintiff is required to plead in order to state a claim:

Plaintiff's sole allegations regarding what entity (if any) meets ▮▮▮▮▮▮▮ are contained in Paragraph 25 of the Complaint, which, as an initial matter, is pled "on information and belief."  Plaintiff asserts on information and belief that the thirteen NDC Aggregators (or "Approved Partners") listed in Paragraph 25 ▮▮▮▮▮▮▮ and provides quotes from these companies' individual websites as support.  Yet New York law is clear that a plaintiff pleading on information and belief must also point to "information that will render these statements

any more than a speculative claim." *Williams v. Calderoni*, 2012 WL 691832, at \*7 (S.D.N.Y. Mar. 1, 2012), *aff'd sub nom. Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013) (internal quotations omitted). Here, despite Plaintiff's attempt to cobble together random phrases from the Approved Partners' individual websites, Plaintiff fails to provide "a statement of the facts upon which the belief is founded" that ███████████████████ *Hilliard*, 896 F. Supp. 2d at 259. And the referenced websites provide an insufficient foundation for Plaintiff's belief, because none of these websites establish that any Approved Partner ████████████████████

████████████████ (*See supra* at 6–7.) Furthermore, it strains credulity that given Sabre's longstanding involvement in the airline industry and prior litigation—where it took the position that Travelfusion, one of the Approved Partners at issue here, is a "non-GDS Aggregator"[10]—Sabre is only capable of alleging threadbare information about these NDC Aggregators "on information and belief." Sabre should not be permitted to benefit from withholding information that it knows about these NDC Aggregators in the hopes of creating enough ambiguity to survive a motion to dismiss.[11] For these reasons alone, Plaintiff's information and belief pleadings should be rejected as impermissibly unsupported. *See Cap. Access Servs. Inc. v. Direct Source Seafood, LLC*, 2018 WL 3093967, at \*8 (S.D.N.Y. June 22, 2018), *aff'd*, 767 F.

---

[10] *See supra* note 4.

[11] Separately, independent of Hawaiian's arguments for dismissal based on Sabre's failure to allege sufficient facts in its Complaint in support of its claims, Hawaiian moves to dismiss the Complaint on the ground of judicial estoppel. Sabre should be judicially estopped in this litigation from taking the position that ██████████████████████ ████████████████, based on Sabre's prior judicial statements ████████████████████ ████████ and representing to a court that there are only three GDSs in the United States: Sabre, Amadeus, and Travelport. *See supra* notes 4, 5. The Court may take judicial notice of the existence of these inconsistent statements, and Sabre should be estopped ████████████. *See Lia*, 909 F. Supp. 2d at 179 (dismissing claims with prejudice on grounds of judicial estoppel). Because Sabre's claims are founded entirely on its position that ████ █████████████ Sabre's claims should be dismissed with prejudice. *See Pu v. Russell Publ'g Grp., Ltd.*, 2016 WL 9021990, at \*7 (S.D.N.Y. Sept. 2, 2016), *aff'd*, 683 F. App'x 96 (2d Cir. 2017) (Broderick, J.) ("A District Court, in taking judicial notice of documents filed on other dockets, may then find that a litigant is judicially estopped from taking a position contrary to one already propounded, regardless of where the truth may lie.") (citing *Lia*, 909 F. Supp. 2d at 178).

App'x 157 (2d Cir. 2019) (Broderick, J.) (dismissing tortious interference claims, where plaintiff

alleged, on information and belief, only "conclusory statements devoid of any factual support").

Even if the Court credits Plaintiff's information and belief allegations, they are still far too

conclusory to establish ████████████████████████████████████████████

█████  Specifically, Plaintiff fails to allege any specific facts showing that these thirteen

companies ███████████████████████████████████████████████

████████████████████████████████  Nor does Plaintiff allege that any of the thirteen

Approved Partners listed in the complaint █████████████████████████████

████  Further, while some of the statements Sabre quotes refer to ████████  none of these

statements describe ████████████████████████████████████████████

████████████████████████████  (*See, e.g.*, Compl. ¶ 25(b) ("APG

works with over 200 airline clients across all distribution models").)  Moreover, none of the quoted

statements  mention  ████████████████████████████████████████

████████████████████████████████████  (*See* Agreement at 17.)

To the contrary, Plaintiff's allegations reinforce that HA Connect only offers flights and fares from

a *single* travel supplier:  Hawaiian Airlines.  (*See, e.g.*, Compl. ¶ 18 (discussing Hawaiian's

distribution policy regarding "Hawaiian's inter-island flights" and other "Hawaiian flights").)

These deficiencies are fatal to Plaintiff's claims.  *See Akyar v. TD Bank US Holding Co.*, 2018 WL

4356734, at *4 (S.D.N.Y. Sept. 12, 2018) (Broderick, J.) (dismissing discrimination claim under

Rule 12(b)(6), where plaintiff  "conclusory allegations  are  insufficient  to  plausibly allege that

Defendants were motivated by discriminatory animus"); *Lopez v. Arby's Franchisor, LLC*, 2021

WL 878735, at *7 (S.D.N.Y. Mar. 8, 2021) (Broderick, J.) (dismissing ADA discrimination claim

in light of plaintiff's "conclusory allegations," where plaintiff did not "provide any source of

16

knowledge for his 'information and belief'"); *Calcano v. True Religion Apparel, Inc.*, 2022 WL 973732, at *7 (S.D.N.Y. Mar. 31, 2022) (Broderick, J.) (same).

Even if Plaintiff pled sufficient facts to meet ██████████████████ (and it has not), Plaintiff must also allege sufficient facts to establish that ██████████████████ Plaintiff has failed here as well.  Specifically, Plaintiff fails to allege that any Approved Partner was ███████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ (*See generally*, Compl. ¶ 25.)  Plaintiff merely alleges, in conclusory fashion, that "each of these distribution systems ███████████████████████████████████████████████████████████████████ ██████████████████████ (*Id.*)  Such threadbare allegations fall far short of Plaintiff's pleading burden.  *See Gordillo v. 20 E 49 Rest., Inc.*, 2019 WL 1206697, at *4 (S.D.N.Y. Mar. 14, 2019) (Broderick, J.) ("Plaintiffs make each of these boilerplate allegations upon 'information and belief,' but they otherwise point to no information that will render these statements any more than a speculative claim."); *Laskowski v. Liberty Mut. Fire Ins. Co.*, 2011 WL 4965454, at *3 (N.D.N.Y. Oct. 19, 2011) (dismissing state law deceptive business practices claim under Rule 12(b)(6), where plaintiff alleged "only factually-devoid conclusory statements").

Plaintiff cherry-picks statements from the Approved Partners' websites to suggest that they may work with multiple airlines, or perhaps have the technical ability to display flights of multiple carriers, however, Plaintiff fails to allege whether any of the Approved Partners ██████████ ██████████ Hawaiian's flight information with information from other carriers.  This is a key distinction because ██████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████ ██████ Plaintiff's Complaint is simply devoid of any factual allegations that these companies

17

███████████ Hawaiian's content for any travel agency.  (*See* Compl. ¶ 25.)  Indeed, Hawaiian's website, which describes the HA Connect system, notes that these companies "provide API technology to agencies," on behalf of Hawaiian, demonstrating that this relationship between the Approved Partners and travel agencies concerns only products or services offered by Hawaiian. (*See* Colón-Bosolet Decl. Ex. B, at 1.)  This is only further support that Hawaiian's distribution of flights and fares through the HA Connect system—including the role of Approved Partners in assisting with API technology—does not meet ████████████████████████████████ █████████████

Because Plaintiff fails to plead any breach of Hawaiian's ██████████████████████ ███████████████, the Court should dismiss the Complaint in its entirety.  *See WestLB AG v. BAC Florida Bank*, 912 F. Supp. 2d 86, 92 (S.D.N.Y. 2012) (dismissing claims where plaintiff "failed to identify a breach of contract"); *CVC Claims Litig. LLC v. Citicorp Venture Cap. Ltd.*, 2006 WL 1379596, at *4 (S.D.N.Y. May 18, 2006) (dismissing breach of contract claims where plaintiff failed to plead that conditions precedent were performed or had occurred).

### 4.   *Plaintiff's Cited References Further Support That HA Connect Approved Partners Do Not Meet the* ████████████████

Not only are Plaintiff's allegations too conclusory to sufficiently establish that ████████ ████████████████████████████ but the websites quoted in Paragraph 25 of the Complaint also belie Plaintiff's assertions.  Specifically, the websites cited by Plaintiff █████ █████████████████████████████—instead they refer to them as "NDC aggregators" or companies that specialize in NDC technology.  For example, Hawaiian's webpage listing these Approved Partners, cited in Footnote 2 of the Complaint, states:  "Our HA Connect Approved Partners are NDC aggregators that provide API technology to travel agencies."  *See* Colón-Bosolet Decl. Ex. B, at 1.  These public statements cited by Plaintiff only further support that the Approved

18

Partners are better described as "non-GDS Aggregators," as Plaintiff itself has described them in other judicial proceedings,[12] rather than attempting to shoehorn these companies into ███ ████████████████████████████ Likewise, several of the Partners' websites cited by Plaintiff refer to these entities as NDCs (or NDC aggregators), ████████████████████████████ ███████████

- TravelFusion's website, cited in Footnote 12 of the Complaint, states: "Certified at NDC level 4, we now offer the most advanced and easily-adopted platform for the future of distribution – tfNDC." *See* Colón-Bosolet Decl. Ex. I, at 1.

- Aaron Group's website, cited in Footnote 3 of the Complaint, has several links on its page titled "NDC Aggregator." *See* Colón-Bosolet Decl. Ex. J, at 1, 5.

- Air Gateway's website, cited in Footnote 4 of the Complaint, states that the company's "products are built to enable travel agents on the adoption of the IATA NDC Standard," and that it offers an "NDC Gateway" and a "Web NDC Agency Desktop Tool." *See* Colón-Bosolet Decl. Ex. K, at 1.

- APG's website, cited in Footnote 5 of the Complaint, states that it offers an "NDC Platform," which is a "new generation distribution solution based on NDC compliant technology." *See* Colón-Bosolet Decl. Ex. L, at 1.

- NuFlight's website, cited in Footnote 8 of the Complaint, states that it offers a "Booking Portal with real-time NDC content aggregation." *See* Colón-Bosolet Decl. Ex. M, at 3.

- TPConnects's website, cited in Footnote 11 of the Complaint, states that it offers "the world's leading NDC portal." *See* Colón-Bosolet Decl. Ex. N, at 1.

- Verteil's website, cited in Footnote 14 of the Complaint, states that it is a "leading travel tech company and NDC aggregator fully focused on phasing out legacy airline distribution space with its new direct connect distribution system, based on IATA's New Distribution Capability (NDC)." *See* Colón-Bosolet Decl. Ex. O, at 4.

There can be no question that Plaintiff is aware of ████████████████████████████ ████████████████████████████████████████████████████████████

---

[12] *See supra* note 4.



(Agreement at 17–18.)[13]

In short, Plaintiff's claims based on ██████████████████████████████████████ ████████████████████████████████████████ Plaintiff's threadbare allegations fail to establish that ██████████████████████ ████████████████████████████████████████████ ██████████████████████ As such, Counts I and II of the Complaint necessarily fail to state a claim for breach of contract.  *See Symquest Group, Inc. v. Canon U.S.A., Inc.*, 186 F. Supp. 3d 257, 264–65 (E.D.N.Y. 2016) (granting motion to dismiss breach of contract claim, where defendant's actions were within its contractual rights and therefore could not form the basis of a breach claim).

**5.    *Other Provisions of the Agreement Reinforce the* ████████████████**

Critically, the ██████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████ (Agreement at 17.) ██████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ (*Id.* at 18.) ██████████████████████████████████████████ ████████████████████████████████████████████████

---

[13] Any attempt by plaintiff to equate the terms would be impermissible under New York law.  *See e.g.*, *Del Glob. Techs. Corp. v. Park*, 2008 WL 5329963, at *3 (S.D.N.Y. Dec. 15, 2008) ("It is a cardinal rule of contract interpretation that a court shall not interpret an agreement in a way which leaves a part meaningless or ineffectual.") (internal quotations omitted).

██████████████████████████████████████████████████████████

████████████████████████ (*Id.*).

Reading these provisions "together as a harmonious whole"—as New York law requires—

supports the conclusion that a ██████████████████████████████████████████

████████████████████████████████████████ *See Atlas Partners, LLC*

*v. STMicroelectronics, Int'l N.V.*, 2015 WL 4940126, at *11–12, (S.D.N.Y. Aug. 10, 2015)

(dismissing breach of contract claim, holding that considering the agreement "as a whole" leads to

unambiguous interpretation, while plaintiff's interpretation "would lead to a result that is absurd

and/or commercially unreasonable"). Here, Plaintiff's theory of breach requires pleading with

sufficient detail that HA Connect or any NDC Aggregator ██████████████████████

██████, which is a stringent factual requirement that Plaintiff has failed to meet. Thus,

Plaintiff's attempt to transform ████████████████████████████████████████

████████████████ should be rejected, warranting dismissal.

**6.      *Plaintiff's Allegations Further Support That the HA Connect System* ████**
████████████████████████████

Not only does Plaintiff fail to allege that HA Connect or any Approved Partner ████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Not

surprisingly, Sabre conveniently omits reference to ████████████████████████, *see*

Compl. ¶ 16(d), and offers no support for its assertion that ████████████████████████

are "not applicable here," *see id* ¶ 15. Contrary to Plaintiff's assertion, HA Connect does exactly

what ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████ (Agreement at 17.)  As discussed above,

HA Connect provides NDC technology directly to travel agencies, only for *Hawaiian's* flights and

fares, whether this information is transmitted directly to agencies, through the "Partner Portal," or

via software provided by an NDC Aggregator.  (*See supra* at 7–8.)  Plaintiff does not allege (nor

could it) that HA Connect distributes other airlines' flights or fares.  (*See, e.g.*, Compl. ¶ 18

(discussing Hawaiian's distribution policy regarding "Hawaiian's inter-island flights" and other

"Hawaiian flights").)

Because the ████████████████████████████████████

██████████████████, as it has done with HA Connect, ████████████████████

████████████████ and Plaintiff's breach claims fail.  New York law is clear that where

the terms of documents contradict a plaintiff's claims, dismissal is appropriate.  *See Ergowerx*

*Int'l, LLC v. Maxell Corp. of Am.*, 18 F. Supp. 3d 430, 440 (S.D.N.Y. 2014) ("In general, dismissal

of a breach of contract claim is appropriate where a contract's clear, unambiguous language

excludes a plaintiff's claim.").  Here, the unambiguous language of ██████████████████

forecloses any claim for breach because the HA Connect platform, including the role of NDC

Aggregators in providing API technology to travel agencies, ██████████████████████

████████████████ As such, Plaintiff cannot establish any breach of ████████████████

███████████████████████ and Plaintiff's claims should be dismissed with prejudice for

failure to state a claim.  *See Marans v. Intrinsiq Specialty Sols., Inc.*, 2018 WL 4759772, at *4

(S.D.N.Y. Sept. 30, 2018) (Broderick, J.) (dismissing breach of contract claim, where defendant

complied with the termination provision at issue under the contract; plaintiff thus "fail[ed] to make

out a claim based on the plain terms of the Agreement").

## B.      Plaintiff's Claims for Breach of the Implied Covenant of Good Faith and Fair Dealing Should Be Dismissed as Duplicative

"New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co*., 310 F.3d 73, 81 (2d Cir. 2002).  "A claim for breach of the implied covenant [of good faith and fair dealing] will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract*.*" *Doyle v. Mastercard Int'l Inc*., 700 F. App'x 22, 24 (2d Cir. 2017) (summary order) (quoting *ICD Holdings S.A. v. Frankel*, 976 F. Supp. 234, 243–44 (S.D.N.Y. 1997)); *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc*., 723 F.3d 192, 203–4 (2d Cir. 2013) (finding that a "claim for breach of an implied covenant of good faith and fair dealing was properly dismissed insofar as it duplicate[d] the breach of contract claims").  This doctrine has been repeated by courts in this District in support of dismissing duplicative claims for breach of the implied covenant, as Plaintiff has pled here.  *See Jill Stuart Asia LLC v. LG Fashion Corp.*, 2019 WL 4450631, at *2 (S.D.N.Y. Sept. 17, 2019)) (Broderick, J.) (dismissing duplicative claims for breach of the implied covenant, where "Plaintiffs do not dispute that they base their breach of the covenant of fair dealing claims on the same operative facts as their breach of contract claims"); *Marolla*, 2019 WL 4194330, at *3 (dismissing duplicative claims for breach of the implied covenant, where "Plaintiff does not allege any facts in support of his claim against any Defendant for breaches of the covenant of good faith and fair dealing that are distinct from the facts underlying his breach of contract claim").

Here, Plaintiff asserts Counts III and IV of the Complaint "in the alternative" to Counts I and II, respectively.  (*See* Compl. ¶¶ 51, 56.)  In addition, Plaintiff incorporates by reference the identical factual allegations into Counts III and IV as it does for Counts I and II.  (*See* Compl. ¶¶

23

32, 39, 46, 52 (incorporating by reference paragraphs 1 through 31).)  Finally, the bases for Plaintiff's claims under Counts I and II are materially identical to those of Counts III and IV, respectively.  (*Compare* Compl. ¶¶ 36–38, *and id.* ¶¶ 43–45, *with id.* ¶ 48–50, *and id.* ¶¶ 54–55.) Therefore, the Court should dismiss Plaintiff's claims for breach of the implied covenant of good faith and fair dealing as duplicative.  *See Brainbuilders LLC v. EmblemHealth, Inc.*, 2022 WL 3156179, at *8 (S.D.N.Y. Aug. 8, 2022) (dismissing claim for breach of the implied covenant, where "Plaintiffs' breach of contract and breach of implied covenant claims are predicated on the same allegations").

## IV.    CONCLUSION AND REQUESTED RELIEF

Hawaiian respectfully requests that the Court dismiss this case with prejudice.

November 21, 2022.

Respectfully submitted,
/s/  *Melissa Colón-Bosolet*

Angela C. Zambrano, *pro hac vice*
Yolanda C. Garcia, *pro hac vice*
Mitchell B. Alleluia-Feinberg, *pro hac vice*
SIDLEY AUSTIN LLP
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Telephone: (214) 981-3401
Facsimile: (214) 981-3400
angela.zambrano@sidley.com
ygarcia@sidley.com
malleluiafeinberg@sidley.com

Melissa Colón-Bosolet
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599
mcolon-bosolet@sidley.com

***Attorneys for Defendant***
***Hawaiian Airlines, Inc.***