# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

ONE MANHATTAN WEST
NEW YORK, NY 10001
———
TEL: (212) 735-3000
FAX: (212) 735-2000
www.skadden.com

DIRECT DIAL
1.212.735.2491
EMAIL ADDRESS
EVAN.KREINER@SKADDEN.COM

FIRM/AFFILIATE OFFICES
———
BOSTON
CHICAGO
HOUSTON
LOS ANGELES
PALO ALTO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SÃO PAULO
SEOUL
SHANGHAI
SINGAPORE
TOKYO
TORONTO

December 9, 2022

**VIA ECF**

Hon. Vernon S. Broderick
United States District Court Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

In accordance with my individual rules, parties are ordered to file an unredacted copy of the document with the proposed redactions highlighted. *See*, Rule 5(B)(iii) of the Individual Rules & Practices in Civil Cases of Judge Vernon S. Broderick. In the future, if the parties seek to file sealed or redacted documents, they should do so in accordance with Rule 5(B) of my Individual Rules. **SO ORDERED:**

*Vernon Broderick*
HON. VERNON S. BRODERICK
UNITED STATES DISTRICT JUDGE
1/9/2023

RE:     *Sabre Global Technologies Limited v. Hawaiian Airlines, Inc.*, Case No. 1:22-cv-7395 Letter Motion to Seal Motion to Dismiss and Exhibit F Thereto

Dear Judge Broderick:

We represent Plaintiff Sabre Global Technologies Limited ("Sabre") in this breach of contract action against Hawaiian Airlines, Inc. ("Hawaiian"). Pursuant to Your Honor's Individual Rule of Practice 5(B) and the order Your Honor entered on November 22, 2022 (ECF No. 29), Sabre respectfully moves to maintain under seal the redacted portions of Hawaiian's Memorandum of Law in Support of Its Motion to Dismiss (ECF No. 26) and Exhibit F to the Declaration of Melissa Colón-Bosolet, which contains the parties' operative Distribution Services Agreement (the "Agreement") (ECF No. 27-6).

Sabre initiated this action on August 29, 2022 by filing a Miscellaneous Action and a Letter Motion to File Partially Redacted Complaint. *Sabre Glob. Techs. Ltd. v. Hawaiian Airlines, Inc.*, No. 1-22-mc-246 (S.D.N.Y. Aug. 29, 2022), ECF No. 1. In the letter motion, Sabre sought to maintain under seal those parts of the complaint that contained, revealed, or described the terms and conditions of the Agreement, as well

Hon. Vernon S. Broderick
December 9, 2022
Page 2

as the negotiating history between Sabre and Hawaiian. *Id.*, ECF No. 1-1, p. 1. The letter motion explained that "exposing the terms in Sabre's contract with Hawaiian, along with details of the negotiating history between Sabre and Hawaiian, would harm Sabre's competitive positioning because, among other reasons, Sabre would be at an unfair disadvantage if counterparties (and competitors) understood what terms other travel industry participants had negotiated with Sabre." *Id.* at 2. In addition, sealing this material would be consistent with other cases in which this Court sealed such information relating to Sabre's contracts with airlines. *Id.* Judge Halpern granted Sabre's letter motion and directed Sabre to file a redacted complaint. *Id.*, ECF No. 3.

Hawaiian has now filed a motion to dismiss in this action. (ECF No. 25.) In advance of filing, Hawaiian and Sabre corresponded, and Sabre requested that Hawaiian redact material that would reveal the terms of the Agreement and file the Agreement itself under seal. Accordingly, pursuant to Your Honor's Individual Rule of Practice 5(B), Hawaiian filed a letter motion to seal this material. (*See* ECF No. 26 (seeking to redact the memorandum of law); ECF No. 27-6 (seeking to file the Agreement under seal).)

Sabre now writes to request that Hawaiian's memorandum of law remain redacted and that the Agreement remain under seal. Although a general presumption exists in favor of public access to judicial documents, courts seal materials where, as here, proposed redactions are "narrowly tailored" and "essential to preserve higher values." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (citation omitted). These "higher values" include the need "to prevent the unauthorized dissemination of confidential business information," such as the terms of an operative contract. *Allianz Glob. Invs. GmbH v. Bank of Am. Corp.*, No. 18 Civ. 10364 (LGS), 2021 WL 2011914, at *1 (S.D.N.Y. May 20, 2021); *see also W.J. Deutsch & Sons Ltd. v. Diego Zamora, S.A.*, No. 1:21-cv-11003-LTS, 2022 WL 890184, at *2-3 (S.D.N.Y. Mar. 25, 2022) (granting motion to seal operative contract of a breach-of-contract action because "disclosure of this confidential business information would subject [the party] to a competitive disadvantage").

The Agreement and the proposed redactions to the motion to dismiss meet the required threshold to seal judicial documents. Sabre's agreement with Hawaiian is currently operative, and the terms in Sabre's contracts with airlines, such as Hawaiian, are heavily negotiated and competitively sensitive. More specifically, exposing the terms in Sabre's contract with Hawaiian would harm Sabre's competitive positioning because, among other reasons, Sabre would be at an unfair disadvantage if counterparties (and competitors) discovered the terms other travel industry participants had negotiated with Sabre. Such harm would accrue for both the terms that are specifically at issue in this litigation and included in Hawaiian's motion to

Hon. Vernon S. Broderick
December 9, 2022
Page 3

dismiss (e.g., terms that set the parameters for which flights and fares the Agreement requires Hawaiian to provide to Sabre), as well as the many other terms (e.g., pricing terms) that are in the Agreement and not at issue here. Indeed, the terms that are at issue in this litigation are extraordinarily sensitive precisely because they set the parameters for the flights and fares that Hawaiian must provide to Sabre, which, along with pricing, are among the most critical and highly negotiated terms in Sabre's distribution contracts with airlines. Accordingly, if other airlines or Sabre's distribution competitors learned about the contours of such terms in Sabre's contract with Hawaiian, that could harm Sabre in its negotiations with other airlines in the future, as well as its competition vis-à-vis other distributors of airline flights and fares. Moreover, the public has only a limited interest in accessing the many terms in the Agreement that are not at issue here. *See Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13 CIV. 1654 RA HBP, 2015 WL 4298572, at *5 (S.D.N.Y. July 15, 2015) ("[T]he presumption of access to these documents is low, because the redacted information is minimally relevant to the parties' claims and does not appear necessary to or helpful in resolving the motion for leave to amend.").

For these reasons, this Court has previously redacted language containing the terms of contracts between Sabre and airlines—and fully sealed the contracts themselves—as part of dispositive motions, even where the opposing party airline contested sealing.[1] *See US Airways, Inc. v. Sabre Holdings Corp.*, No. 1:11-cv-2725-LGS ("*US Airways*"), ECF No. 226, at 1-2 (Sabre's letter motion to seal noting that opposing party was pursuing publication of confidential documents); *id.*, ECF No. 250 (order granting sealing). For example, in *US Airways*, Sabre's summary judgment brief referred to the terms of contracts between Sabre and multiple airlines. *See id.*, ECF No. 226 (letter motion to seal); *id.*, ECF No. 204 (Sabre's Memorandum of Law in Support of Its Motion for Summary Judgment); *id.*, ECF No. 205 (Declaration of Steven J. Kaiser). Sabre and the plaintiff in that case, US Airways, also included the contracts themselves as exhibits to their summary judgment briefing. *Id.*, ECF No. 205-2 (Exhibits E3-E4 to the Kaiser Declaration, Exhibits F17, F24, F26, F27, F31 to the Moss Declaration). Sabre argued that revealing the contract terms and the contracts would "harm Sabre's competitive position [because t]he terms are heavily negotiated and various parties would be placed at an advantage with respect to Sabre if they understood what other parties had negotiated." *Id.*, ECF No. 226, at 2. Accordingly, the Court granted Sabre's motion to redact the contract terms from the

---

[1] Although Sabre and Hawaiian first met and conferred regarding the continued sealing of the Agreement and Hawaiian's motion to dismiss brief on November 22, 2022, Hawaiian just today informed Sabre that it intends to oppose sealing any information other than the specific prices set in the Agreement. Should the Court deem it necessary, Sabre reserves the right to respond to any argument raised in any memorandum Hawaiian files in opposition to this letter motion.

Hon. Vernon S. Broderick
December 9, 2022
Page 4

briefing and to seal the contracts themselves.  *Id.*, ECF No. 250.  Notably, the Court sealed Sabre's contracts with airlines again in connection with a subsequent motion for summary judgment, even for contracts that, at that point, were over ten years old and no longer operative.  *See id.*, ECF No. 1067 (letter motion to seal); *id.*, ECF No. 1211 (order granting letter motion).[2]

The Agreement between Sabre and Hawaiian is the same type of contract as those at issue in *US Airways*:  it is a distribution contract between Sabre and an airline that could harm Sabre's negotiating positions with other airlines if the terms are revealed.  Indeed, the Agreement is even more sensitive than some of the contracts that were sealed in *US Airways*, as the Agreement is operative and was more recently signed.  Accordingly, for the same reasons as the Court allowed for redaction and sealing in *US Airways*, as well as those set forth above, the Court here should maintain the redactions in ECF No. 26 and keep ECF No. 27-6 fully under seal.

We thank the Court for its consideration of this request.

---

[2] Similar to Judge Schofield's sealing orders in *US Airways*, in a recent action concerning "contract-related issues" between Sabre and American Airlines, the state trial court permanently "seal[ed] the entire case file."  *In re American Airlines, Inc.*, No. 02-22-00201, at 2 n.1, 3 (Tex. Ct. App. Sept. 12, 2022), *available at* https://cases.justia.com/texas/second-court-of-appeals/2022-02-22-00201-cv.pdf?ts=1663061559 and attached as Exhibit A.

Hon. Vernon S. Broderick
December 9, 2022
Page 5

DATED: December 9, 2022
　　　　New York, New York

Respectfully submitted,

/s/ *Evan Kreiner*
Evan R. Kreiner
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
Phone: (212) 735-3000
evan.kreiner@skadden.com

Steven C. Sunshine
Tara L. Reinhart (*pro hac vice*)
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, DC 20005
Phone: (202) 371-7860
steve.sunshine@skadden.com
tara.reinhart@skadden.com

*Counsel for Sabre Global
Technologies Limited*

# EXHIBIT A



# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00201-CV

_____

IN RE AMERICAN AIRLINES, INC.

_____

Original Proceeding
236th District Court of Tarrant County, Texas
Trial Court No. 236-326225-21

_____

Before Kerr, Womack, and Wallach, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I.  INTRODUCTION

This original proceeding arises from litigation filed by American Airlines, Inc. against Sabre Holdings Corporation, Sabre GLBL Inc., and Sabre Travel International Limited (collectively, Sabre).  American filed its petition for writ of mandamus under seal[1] seeking to have this court order the trial court to vacate (1) its Order Denying American Airlines, Inc.'s Motion to Compel Production of Privileged Trade Secrets of Sabre and Non-Parties and (2) its "verbal[] instruct[ion]"[2] to the parties "not to electronically file materials under seal in this case with the [D]istrict [C]lerk through the eFileTexas.gov system" and to instead "email filings to the court coordinator directly" (the Email Order).  Because the trial court has not complied with the mandatory language of Rule 74 as to the documents that it required to be emailed to the court coordinator, we grant relief regarding the Email Order.  Tex. R. Civ. P. 74. But we deny the other relief sought in American's petition for writ of mandamus.  *See* Tex. R. App. P. 52.8(a), (d).

---

[1]American has filed a separate appeal in cause number 02-22-00159-CV challenging a different trial-court order sealing the entire case file.

[2]We may grant mandamus relief from an oral order that is clear, specific, enforceable, and adequately shown by the record.  *In re Bledsoe*, 41 S.W.3d 807, 811 (Tex. App.—Fort Worth 2001, orig. proceeding).  Sabre has not argued that the trial court's verbal directive fails to meet these requirements.

## II. BACKGROUND

Sabre acts as an intermediary between airlines and travel agents via its Global Distribution System (GDS). *Sabre Travel Int'l, Ltd. v. Deutsche Lufthansa AG*, 567 S.W.3d 725, 728 (Tex. 2019). Through the GDS, Sabre "connects airlines with consumers by aggregating travel offerings of multiple airlines for comparison shopping by travel agents." *Id.* Airlines, including American, contract with Sabre for inclusion of their flight data in the GDS. *See id.*

In June 2021, American sued Sabre over contract-related issues. American sought to expedite the suit.

After American requested discovery from nonparty Delta Air Lines, Inc., American and Sabre negotiated an agreed protective order, which applies to documents furnished by parties and nonparties, defines two categories of confidential documents, and restricts who may view the documents in each category. Sabre and Delta[3] provided some documents to American with provisions redacted. But Sabre and Delta resisted discovery of the redacted information claiming that it was privileged trade-secret information of Delta. Sabre also withheld other documents and information on the basis of trade-secret privilege.[4]

---

[3]Delta produced a redacted version of its contract with Sabre in accordance with a Rule 11 agreement with American.

[4]Not only does Sabre claim a trade-secret privilege, but also Delta and several other nonparties have resisted document production based on the trade-secret privilege.

American filed a motion to compel production of the withheld documents, and the trial court held a hearing on the motion that lasted three days:  April 28, 2022, April 29, 2022, and May 2, 2022.  The trial court denied the motion to compel in an order dated May 5, 2022 (Motion to Compel Order).  Although the Motion to Compel Order did not specifically mention the in camera documents as documents that the trial court had considered in its ruling, the Motion to Compel Order did state that the trial judge had considered "all relevant papers submitted to or filed in th[e] litigation," and the mandamus record shows that Sabre had delivered the withheld documents to the trial judge for in camera review on April 26, 2022.[5]

Meanwhile, American and Sabre filed agreed motions to seal parts of the trial-court record pertaining to American's application for a temporary injunction, and the trial court ordered those parts of the record sealed.  Later, however, in a one-line, handwritten order, the trial court sua sponte ordered the entire case file sealed.  On January 18, 2022, the trial court—"through its court coordinator"[6]—verbally issued the Email Order.

---

[5]The trial court delivered the seven binders of in camera documents to this court for purposes of the mandamus proceeding.

[6]It is undisputed that the coordinator was delivering this instruction from the trial judge.  See Higginbotham v. Collateral Prot., Inc., 859 S.W.2d 487, 490 (Tex. App.—Houston [1st Dist.] 1993, writ denied) ("The record establishes that the court coordinator, acting as the agent for the trial court, sent the parties at least two notices that the case was set for a jury trial."); see also Butler v. State, 6 S.W.3d 636, 641 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (citing Tex. Gov't Code Ann. § 74.101(a) for establishment of coordinator "to improve justice and to expedite the processing of

American complied with the Email Order until the trial court overruled American's motion to vacate the sua sponte order sealing the entire case file. American then filed an appeal from that order in this court.[7]

Three days after filing the notice of appeal, American filed—with the trial-court clerk—a Motion Requesting Authorization To Prepare And Transfer Sealed Clerk's And Reporter's Records (the Transfer Motion) and a contemporaneous Plaintiff's Designation Specifying Material To Be Included In Clerk's Record (the Designation).[8] The Transfer Motion sought a trial-court order "authorizing the [D]istrict [C]lerk and court reporter to prepare the Clerk's and Reporter's Records and transmit those records to the Second Court of Appeals under seal."[9] The Designation, referenced in

---

cases through the courts" and citing *Higginbotham* for the proposition that "the court coordinator can act as an 'agent for the trial court' in the pursuit of judicial economy").

[7]Nothing in this memorandum opinion is to be construed as ruling on the issues to be determined in the appeal.

[8]American filed these appeal documents in a supplemental mandamus record. But we may also take judicial notice of our own records in the appeal for purposes of this original proceeding. *See, e.g., U.S. Cap. Invs., LLC v. Shahbazi*, No. 02-17-00199-CV, 2018 WL 772761, at *2 (Tex. App.—Fort Worth Feb. 8, 2018, pet. denied) (mem. op.); *cf. Gardner v. Martin*, 345 S.W.2d 274, 276 (Tex. 1961) ("It is well recognized that a trial court may take judicial notice of its own records in a cause involving the same subject matter between the same, or practically the same, parties.").

[9]The Transfer Motion stated that it was being filed in accordance with the District Clerk's "policy [that] require[s] an order from [the trial court] authorizing [the District Clerk] to prepare and transmit the Clerk's and Reporter's Records to the Second Court of Appeals under seal." Attached was an email from the Administrative

5

the Transfer Motion, included a three-page Exhibit B that listed the "substantive motions and other filings emailed to the court coordinator, in accordance with the" Email Order that American was requesting to "be included in the Clerk's Record" for the appeal.  Sabre did not oppose the Transfer Motion and "designated additional material filed with and maintained only by the trial court's coordinator."  On May 23, 2022, American sent a letter to the trial court noting that Sabre did not oppose the Transfer Motion and "urg[ing] the [c]ourt to consider and promptly rule on the . . . Motion by submission so that American [could] proceed with its urgent appeal."  As of July 22, 2022, the trial court had not ruled on the Transfer Motion "[d]espite multiple requests for a ruling."[10]

In the midst of attempting to obtain a complete clerk's record for the appeal, American filed this mandamus proceeding on May 31, 2022—twenty-two days after filing the Transfer Motion and twenty-five days after filing its notice of appeal— complaining of the Motion to Compel Order as well as the Email Order.

---

Appeals Clerk indicating that she would "not be able to move forward in preparation of the Clerk's record without the signed Order giving [her] permission to do so."

[10]American stated this fact in its Unopposed Motion for Transfer of Designated Trial Court Records filed in the appeal in this court on July 22, 2022; therefore, we consider it undisputed.  We note that a trial court has a ministerial duty to rule on a party's properly filed motion within a reasonable time after it has been submitted to the court or after the party's request for a ruling.  *In re Welsh*, No. 09-22-00262-CV, 2022 WL 3651991, at *1 (Tex. App.—Beaumont Aug. 25, 2022, orig. proceeding) (mem. op.).

## III. DISCUSSION

American raises six issues in its mandamus petition. The first four deal with the Motion to Compel Order, and the fifth issue deals with the Email Order. American asserts in its sixth issue that the trial court's errors cannot be remedied by appeal. We grant relief only on its fifth issue and the part of its sixth issue related to the fifth issue.

### A. Standard of Review

Mandamus relief is an extraordinary remedy. *In re Acad., Ltd.*, 625 S.W.3d 19, 25 (Tex. 2021) (orig. proceeding). The party seeking mandamus relief must show both that the trial court clearly abused its discretion and that the party has no adequate remedy by appeal. *In re Allstate Indem. Co.*, 622 S.W.3d 870, 875 (Tex. 2021) (orig. proceeding).

A trial court abuses its discretion when a decision is arbitrary, unreasonable, and without reference to guiding principles. *Id.*; *see Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). We defer to a trial court's factual determinations that have evidentiary support, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding). An error of law or an erroneous application of the law to the facts is always an abuse of discretion. *See In re Geomet Recycling LLC*, 578 S.W.3d 82, 91–92 (Tex. 2019) (orig. proceeding).

An appellate remedy's adequacy has no specific definition; "the term is 'a proxy for the careful balance of jurisprudential considerations' [that implicate both public and private interests,] and its meaning 'depends heavily on the circumstances presented.'" *Allstate Indem. Co.*, 622 S.W.3d at 883 (quoting *In re Prudential Ins. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding)); *In re Ford Motor Co.*, 165 S.W.3d 315, 317 (Tex. 2005) (orig. proceeding) (quoting *Prudential*, 148 S.W.3d at 136); *see also In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding) ("Whether a clear abuse of discretion can be adequately remedied by appeal depends on a careful analysis of costs and benefits of interlocutory review.").

An appellate remedy is adequate when any benefits to mandamus review are outweighed by the detriments. *Prudential*, 148 S.W.3d at 136. But the converse is not necessarily true; even when the benefits of mandamus review outweigh the detriments, we must consider whether the appellate remedy is nonetheless adequate. *Id.* In evaluating the benefits and detriments, we consider whether mandamus will preserve important substantive and procedural rights from impairment or loss. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). The danger of permanently losing substantial rights occurs when the appellate court would not be able to cure the error, when the party's ability to present a viable claim or defense is vitiated, or when the error cannot be made a part of the appellate record. *ERCOT, Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 641 (Tex. 2021) (orig. proceeding) (citing *In re Van Waters & Rogers, Inc.*, 145 S.W.3d 203, 211 (Tex.

2004) (orig. proceeding)).  We should also consider whether mandamus will allow us "to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments" and "whether mandamus will spare litigants and the public 'the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.'"  *Team Rocket*, 256 S.W.3d at 262 (quoting *Prudential*, 148 S.W.3d at 136).

## B. Email Order

### 1. Rules for Tendering Documents to be Filed

A district clerk has a ministerial duty to file a document when it has been properly presented to the clerk.  *In re Samson Expl., LLC*, No. 09-22-00081-CV, 2022 WL 1177276, at *4 (Tex. App.—Beaumont Apr. 21, 2022, orig. proceeding) (mem. op.).  The Rules of Civil Procedure set forth how documents are to be presented to the clerk for filing.  The default method, subject to certain enumerated exceptions, is that "attorneys must electronically file documents in courts where electronic filing has been mandated."  Tex. R. Civ. P. 21(f)(1); *see* Supreme Court of Tex., Order Requiring Electronic Filing in Certain Courts, Misc. Docket No. 13-9164 (Dec. 9, 2013) (mandating e-filing for all nonjuvenile civil cases in all district courts by 2016);[11] *see also* Supreme Court of Tex., Order Adopting the Recommendations of the Judicial

---

[11]This order vacates and supersedes two prior orders mandating e-filing: Supreme Court of Tex., Order Requiring Electronic Filing in Certain Courts, Misc. Docket No. 13-9092 (June 24, 2013), and Supreme Court of Tex., Order Requiring Electronic Filing in Certain Courts, Misc. Docket No. 12-9206 (Dec. 11, 2012).

Committee on Information Technology for Access to Electronically Filed Court Documents by Judges, Clerks, and Attorneys Through re:SearchTX, Misc. Docket No. 17-9025 (Feb. 21, 2017) (noting in introduction that "e-access . . . is more efficient for judges, clerks, lawyers, and parties" and "provides greater transparency for the justice system that is critical to evaluating its operation, improving its procedures, and strengthening public trust").  "[D]ocuments filed under seal or presented to the court in camera" are among the exceptions to electronic filing and "must not be filed electronically." Tex. R. Civ. P. 21(f)(4)(B)(i).[12]  Nevertheless,

> [e]very pleading, plea, motion, or application to the court for an order, whether in the form of a motion, plea, or other form of request, unless presented during a hearing or trial, *must be filed with the clerk of the court in writing*, . . . and at the same time a true copy must be served on all other parties, and must be noted on the docket.

Tex. R. Civ. P. 21(a) (emphasis added), 74 ("The filing of pleadings, other papers[,] and exhibits as required by these rules shall be made by filing them with the clerk of the court . . . .").[13]  Therefore, under Rule 21, documents not filed electronically that are not "presented during a hearing or trial" should be filed in paper form with the clerk of the court.  Tex. R. Civ. P. 21(a), 21(f)(4)(B)(i); *cf.* Tex. R. Civ. P. 21(f)(4)(C) (listing as one of the exceptions to the e-filing requirement that "[f]or good cause, a

---

[12]Thus, the trial court did not abuse its discretion by ordering that documents under seal not be filed electronically.

[13]In addition, the Tarrant County Local Rules provide that "[a]ll pleadings, motions, notices, and any other paper, document[,] or thing made a part of the record in any civil, family law[,] or criminal case shall be <u>filed with the Clerk</u>." Tarrant (Tex.) Loc. R. 1.06(a).

court may permit a party to file other documents *in paper form* in a particular case" (emphasis added)).

A paper copy permitted to be filed with the trial court clerk may be filed by mail or by hand delivery. *See* Tex. R. Civ. P. 5, 21(a), 74. "[P]leadings, other papers and exhibits" may also be filed with a judge, at the judge's discretion. Tex. R. Civ. P. 74; *Stokes v. Aberdeen Ins.*, 917 S.W.2d 267, 268 (Tex. 1996) (mentioning that Rule 74 gives judge discretion to accept filing); *In re Welvaert*, No. 10-19-00131-CV, 2019 WL 1966962, at *2 (Tex. App.—Waco May 1, 2019, orig. proceeding) (mem. op.) (noting same); *State v. One Million Seven Hundred Eleven Thousand Sixty-One Dollars & Seventy-Nine Cents ($1,711,061.79) in U.S. Currency (Currency Forfeiture)*, No. 04-18-00379-CV, 2018 WL 6793787, at *5 (Tex. App.—San Antonio Dec. 27, 2018, no pet.) (mem. op.) (noting that fact that judge is authorized to accept documents for filing does not mean he did so, especially when judge did not comply with remainder of Rule 74 by noting filing date and time on document and forwarding it to the district clerk); *In re Cuban*, 24 S.W.3d 381, 383 (Tex. App.—Dallas 2000, orig. proceeding) ("A judge may accept a document for filing."). But when a document is so filed, the judge has the duty to "note thereon the filing date and time and forthwith transmit the[ document] to the office of the clerk." Tex. R. Civ. P. 74 (providing that if papers are filed with judge, the judge "shall note thereon the filing date and time and forthwith transmit them to the office of the clerk"); *Cuban*, 24 S.W.3d at 383 (stating that when judge accepts filing under Rule 74, "[t]he judge is to note the date and time on the document and

11

forward it to the clerk's office"); *cf.* Tex. Gov't Code Ann. §§ 311.002, 311.016(2) (providing that for purposes of Code Construction Act, the word "'[s]hall' imposes a duty").

### 2. Purposes of District Clerk's Duties Regarding Court Records

Various statutes and rules govern the district clerk's duties vis à vis filing documents, and case law applies those statutes and rules to different circumstances based on the specific reasons therefor. As we discuss below, among the primary purposes for the district clerk's prescribed duties are to keep and maintain court records in a timely and orderly fashion (1) so that there are no questions about when documents were filed or presented for due-date purposes, (2) so that court records may be timely accessed and viewed by those permitted to do so, and (3) so that documents are maintained securely to protect against unauthorized access or loss.

The Texas Government Code expressly assigns responsibility for court filings to the district clerk. Subsections (a) and (b)(1) of Government Code Section 51.303 provide that a district clerk "has custody of and shall carefully maintain and arrange the records relating to or lawfully deposited in the clerk's office" and that the clerk "shall . . . record the acts and proceedings of the court." Tex. Gov't Code Ann. § 51.303(a)–(b)(1). Additionally, although the Texas Legislature has given district clerks the authority to maintain and store documents "by microfilm, image processing technology, or other process that correctly and legibly reproduces or that forms a medium for copying or reproducing or by optical data storage," that authority

12

is subject to numerous conditions; one such condition is that the district clerk's maintenance and storage plan must "provide standards for the organizing, identifying, coding, and indexing of records *so a record can be retrieved rapidly* and the reproduced record can be certified as a true and correct copy." *Id.* § 51.304(a), (b)(3) (emphasis added). The district clerk's maintenance and storage plan must also "provide for the permanent retention of records, including security provisions to guard against physical loss, alteration, and deterioration." *Id.* § 51.304(b)(5). In contrast, nothing in Government Code Chapter 24 assigns or delegates the above duties to a district-court judge. *See generally id.* §§ 24.001–.034, 24.601–.607.

For purposes of determining timeliness, "an instrument is deemed in law filed at the time it is left with the clerk, regardless of whether or not a file mark is placed on the instrument and regardless of whether the file mark gives some other date of filing." *Standard Fire Ins. v. LaCoke*, 585 S.W.2d 678, 680 (Tex. 1979). Thus, a party satisfies *its duty* under the Rules of Civil Procedure by "put[ting] a legal instrument in the custody and control of the court clerk."[14] *Warner v. Glass*, 135 S.W.3d 681, 684 (Tex. 2004). "The purpose of this rule is to protect a diligent party from being penalized by errors and omissions of the court clerk." *Garza v. State*, 919 S.W.2d 788, 790 & n.4 (Tex. App.—Houston [14th Dist.] 1996, no pet.) (noting—in bail-bond case governed by Rules of Civil Procedure—that "[a]n essential purpose of filing

---

[14]"Electronic service is complete on transmission of the document to the serving party's electronic filing service provider." Tex. R. Civ. P. 21a(b)(3).

documents is to make them part of the records of the district or county clerk . . . and trial court for future reference" and that "having documents in the files of the court and clerk forecloses" questions about when filing and presentment of documents has occurred); *Kelly Moore Paint Co. v. Ne. Nat'l Bank of Fort Worth*, 426 S.W.2d 591, 593 (Tex. App.—Fort Worth 1968, no writ) ("One of the official duties of the clerk is to know 'what his office records show with respect to pending litigation.'" (quoting *Hanks v. Rosser*, 378 S.W.2d 31, 34 (Tex. 1964))).

But the term "filed" has a different meaning when viewed from the perspective of the clerk. *See In re Smith*, 270 S.W.3d 783, 786 (Tex. App.—Waco 2008, orig. proceeding). Under Rules of Civil Procedure 24 through 26, the clerk must

- "[w]hen a petition is filed . . . indorse thereon the file number, the day on which it was filed and the time of filing, and sign his name officially thereto";

- "keep a file docket which shall show in convenient form the number of the suit, the names of the attorneys, the names of the parties to the suit, and the nature thereof, and, in brief form, the officer's return on the process, and all subsequent proceedings had in the case with the dates thereof"; [and]

- "keep a court docket in a permanent record that shall include the number of the case and the names of the parties, the names of the attorneys, the nature of the action, the pleas, the motions, and the ruling of the court as made."

Tex. R. Civ. P. 24–26. Thus, the clerk physically "'files' a document by indorsing a file mark on it, recording it in the clerk's file docket, and maintaining the document in the clerk's file for the suit." *Smith*, 270 S.W.3d at 786.

After a document has been filed with the district clerk, "[e]ach attorney at law practicing in any court shall be allowed at all reasonable times to inspect the papers and records relating to any suit or other matter in which he may be interested."  Tex. R. Civ. P. 76; *see Glidden Co. v. Aetna Cas. & Sur. Co.*, 291 S.W.2d 315, 318 (Tex. 1956) (noting that papers delivered to the clerk's custody for filing are "to be kept by him among the papers in his office subject to such inspection by interested parties as may be permitted by law").  Moreover, Rule 76a provides that "[c]ourt records may not be removed from court files except as permitted by statute or rule."  Tex. R. Civ. P. 76a.[15]

Finally, when a notice of appeal has been filed, the trial-court clerk has a duty to prepare, certify, and timely file the clerk's record with the appellate court if "the party responsible for paying for the preparation of the clerk's record has paid the

---

[15]"[C]ourt records" are defined by Rule 76a as

all documents of any nature filed in connection with any matter before any civil court, except:

> (1) documents filed with a court in camera, solely for the purpose of obtaining a ruling on the discoverability of such documents;
>
> (2) documents in court files to which access is otherwise restricted by law; [and]
>
> (3) documents filed in an action originally arising under the Family Code.

Tex. R. Civ. P. 76a(2)(a).

clerk's fee, has made satisfactory arrangements with the clerk to pay the fee, or is entitled to appeal without paying the fee." Tex. R. App. P. 35.3(a). The clerk's record and reporter's record comprise the "appellate record." Tex. R. App. P. 34.1. Each case—even if bearing multiple cause numbers—has only one appellate record—and, unless an exception applies, that record is due sixty days after the notice of appeal is filed. Tex. R. App. P. 26.1(a)–(c), 34.1, 35.1.

### 3. No Waiver

Sabre contends that American waived its complaint about the Email Order by complying with it without objection. Error-preservation rules apply to original proceedings. *In re Rowes*, No. 05-14-00606-CV, 2014 WL 2452723, at *1 (Tex. App.—Dallas May 30, 2014, orig. proceeding) (mem. op.). Thus, generally, to be considered in an original proceeding, a complaint must have been presented to the trial court by timely request, objection, or motion. Tex. R. App. P. 33.1(a)(1). A request, objection, or motion is considered timely if it is asserted when the potential error becomes apparent. *Hoxie Implement Co. v. Baker*, 65 S.W.3d 140, 145 (Tex. App.—Amarillo 2001, pet. denied).

Here, from the very beginning of the suit, American was focused on expediting the proceedings. While it is true that American followed the Email Order for almost four months, the parties were serving the filings to each other via email, in accordance with the protections agreed to in the protective order. Therefore, the parties were

able to access the documents for purposes of the litigation.  And no disputes arose over the timeliness or accuracy of the emailed documents.[16]

But the nature and scope of, and harm from, the error became apparent when American filed the appeal of the trial court's sua sponte sealing order.  At that time, American filed the Transfer Motion and the Designation, attempting to have the emailed documents filed in a clerk's record in this court.  American has represented to this court—without dispute—that it has made "multiple requests" for a ruling on the Transfer Motion.  Despite the fact that the clerk's record in the appeal was due on July 1, 2022, the trial court did not rule on the Transfer Motion before this court had to grant American's Unopposed Motion for Transfer of Designated Trial Court Records filed in the appeal.  Under these particular circumstances, we conclude that American raised this very issue with the trial court at the time the error became apparent and that the trial court refused to rule on American's complaint.  *See* Tex. R. App. P. 33.1(a)(1), (2)(B).

When a clerk's record was filed in the appeal on July 12, 2022, not only was it filed after we extended the filing date, but it also did not include the documents that had been emailed to the court coordinator according to the Email Order.  Therefore, on American's *unopposed* motion, we ordered the trial court "to direct the court

---

[16]American has noted in its mandamus petition, for example, that it agreed to seal the temporary-injunction proceedings "to avoid further delay in scheduling the temporary[-]injunction hearing."

coordinator of the 236th District Court—and any other trial court personnel in possession of digital or paper copies of the described items—to forward to the Tarrant County District Clerk" the emailed documents that both parties had designated to be included in the clerk's record for the appeal.[17]  *See* Tex. R. App. P. 35.3(c).  And we recently granted a two-week extension of time to file the supplemental clerk's record containing the emailed documents—from August 25, 2022, until September 9, 2022—based on the trial-court clerk's representation that "[p]er the request of the Court Coordinator, Rhonda Young, documents are not readily available."  Although those documents were finally filed on September 7, 2022, the filing of a complete clerk's record in the appeal was delayed for two months and has required multiple orders from this court to accomplish.[18]

---

[17]We ordered Sabre to file a supplemental response to the mandamus petition to explain whether, despite its lack of opposition to an order compelling the trial court to transfer certain of the documents that had been emailed to its court coordinator to the District Clerk for inclusion in the appellate record, Sabre remained opposed to American's request for mandamus relief as to the remaining documents emailed to the court coordinator under this procedure, as well as the forwarding of future documents in this manner.  Sabre filed a supplemental response in which it states that its "agreement with the motion reflected its position that the documents delivered to the court coordinator are properly part of the appellate record."  We find no merit in Sabre's argument that because some of the documents subjected to the disputed procedure "*are in the process of being included in the sealed appellate record* for 02-22-00159-CV," American cannot show harm as to the remaining documents that have never been properly forwarded to the District Clerk under Rule 74.

[18]Although the appeal is interlocutory in the sense that no final judgment has been signed, sealing orders under Rule 76a are deemed severed from the case and function as a final judgment.  Tex. R. Civ. P. 76a(8).  Therefore, the appeal is not subject to an accelerated schedule.

18

Although American characterizes its complaint as one of fundamental error, we need not decide whether the complained-of action is of the type that need not be preserved. Under the unique circumstances of this case, we hold that American sought relief from the trial court when the problem of which it complains—inability to obtain a timely and complete clerk's record—became apparent.[19] That the trial court—in the face of a filed appeal with set deadlines—refused to comply with Rule 74, even after American pointed out the problem and sought an express order, was sufficient to preserve this issue for our review. *See also* Tex. Gov't Code Ann. § 22.221(a) (providing that court of appeals may issue writ of mandamus to enforce its jurisdiction); *cf. In re Simmonds*, 271 S.W.3d 874, 879 (Tex. App.—Waco 2008, orig. proceeding) (holding that if both district clerk and district court refuse to

---

[19]Although procedurally Sabre complains that American failed to timely pursue this complaint in the trial court, its argument also implicates the timing of American's mandamus petition. For similar reasons, we hold that—on these facts—American did not unduly delay in filing its mandamus petition. *See In re Am. Airlines, Inc.*, 634 S.W.3d 38, 43 (Tex. 2021) (orig. proceeding) (holding that American "reasonably explained the year-long period" before it sought mandamus relief because it did not receive the complained-of order for four months and real party in interest thereafter failed to comply with the trial court's ordered prerequisite notice for taking the compelled deposition; thus, American was justified in filing mandamus petition in the face of impending trial to avoid rescheduling the trial date); *cf. In re Whataburger Rests. LLC*, 645 S.W.3d 188, 193–94 (Tex. 2022) (orig. proceeding) (holding that Whataburger was entitled to mandamus relief when clerk's failure to notify it of issuance of appealable interlocutory order precluded it from filing appeal and that Whataburger did not "sleep on its rights" by not checking with the trial court to see if such an order had issued because counsel should be able to rely on clerk's duty to notify).

accept document for filing, court of appeals has jurisdiction to consider whether to order district court to accept filing).

### 4. Consequences of Failure to Comply With Rule 74 Duties on Filing

A trial judge's lack of compliance with Rule 74 when accepting documents for filing prevents the district clerk from complying with his or her statutory and Rule-based duties. That a trial judge to whom a document was tendered did not comply with the mandatory language of Rule 74 has been construed as evidence that the judge exercised Rule 74's discretion not to accept the document for filing. *See Currency Forfeiture*, 2018 WL 6793787, at *4–5; *Garza*, 919 S.W.2d at 789–90; *see also Harbin v. Brown, Graham & Co.*, No. 07-98-0209-CV, 1999 WL 311097, at *1 (Tex. App.—Amarillo 1999, pet. denied) (per curiam) (op. on reh'g, not designated for publication). *But cf. Defee v. Defee*, 966 S.W.2d 719, 721 (Tex. App.—San Antonio 1998, no pet.) (refusing to speculate on when waiver document found in clerk's custody but without clerk's official file-stamp was filed but deferring to bill-of-review judge's finding that trial judge had accepted and placed the waiver in the court's file). Therefore, when a judge agrees to accept a filing under Rule 74 but does not also comply expeditiously with the requirements of Rule 74 by noting the filing date and time on the document

and by "forthwith"[20] transmitting the documents to the district clerk, the primary purposes of filing documents, as explained above, are thwarted.

Although it is understandable in a complex case such as this one—involving voluminous filings by both parties and nonparties, many of which contain confidential material subject to protective orders—that the trial court would make every effort to prevent inadvertent disclosure of a document to an unauthorized person, the procedure fashioned here not only does not comply with Rule 74, but it also prevents the District Clerk from complying with his statutory and Rule-based obligations. The majority of documents tendered in this case from January 18, 2022, to at least July 12, 2022, were not placed in the District Clerk's custody for months. Thus, the District Clerk has been prevented from complying with his statutory duty to maintain, store, and arrange these records, as well as his duty to implement security measures "to guard against physical loss, alteration, and deterioration" of those records. *See* Tex. Gov't Code Ann. § 51.304(a), (b)(5). Finally, nothing indicates how, or if, these documents emailed to the court coordinator have been organized, identified, coded, or indexed so that they "can be retrieved rapidly."[21] *See id.* § 51.304(b)(3).

---

[20]Black's Law Dictionary defines "forthwith" as "[i]mmediately," "without delay," "directly," "promptly," "within a reasonable time under the circumstances," and "with all convenient dispatch." *Forthwith*, Black's Law Dictionary (11th ed. 2019).

[21]In fact, the opposite appears to have been established when the court coordinator told the trial-court clerk that the documents are "not readily available."

Moreover, the Email Order has interfered with the District Clerk's and this court's duties in the pending appeal vis à vis the appellate record.[22]  Sabre contends that American has not been harmed because it was served all of these documents and has them in its possession, as evidenced by its ability to provide us a mandamus record.  But the fact that an appeal from the Email Order (after a final judgment) is inadequate is illustrated by this court's difficulty in obtaining a timely and complete clerk's record for the pending appeal of the sealing order.  This court and the trial court are "jointly responsible for ensuring that the appellate record is timely filed." Tex. R. App. P. 35.3(c).  A district clerk has a duty to timely file the clerk's record portion of the appellate record.  Tex. R. App. P. 35.3(a).  We cannot consider documents that are not part of the appellate record.  *See Cummings v. Billman*, 634 S.W.3d 163, 166 n.1 (Tex. App.—Fort Worth 2021, no pet.) (mem. op.)  Our inability to timely obtain a complete clerk's record and thereby timely order briefing in the appeal amply shows why mandamus relief is appropriate.  Moreover, the fact that Sabre did not oppose the supplementation of the clerk's record in the appeal helps show why mandamus relief is appropriate here.  Complex litigation can often spawn

---

[22]*Cf. In re M.R.J.M.*, 193 S.W.3d 670, 675–76 (Tex. App.—Fort Worth 2006, order) (en banc) (reasoning that statute—allowing trial court to find that appeal from parental-rights termination judgment would be frivolous—would be unconstitutional if interpreted to allow frivolousness finding to obviate the filing of a complete appellate record in this court for review of factual-sufficiency argument urged on appeal), *disp. on merits*, 280 S.W.3d 494 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g).

multiple appeals.  If we were not to order relief now, we could be faced with having to issue piecemeal orders for the trial court to comply with its Rule 74 duty each time an appeal is filed.  Such a remedy would be wasteful in any litigation, much less one in which the plaintiff has expressly sought expedited relief.[23]

### 5.  Civil Practice and Remedies Code Does Not Authorize Procedure

Sabre finally contends that Texas Civil Practice and Remedies Code Section 134A.006(a)—which provides that in an "action" under Chapter 134A, "a court shall preserve the secrecy of an alleged trade secret by reasonable means"—is instructive as to whether the trial court was authorized to mandate this alternative to filing documents in the clerk's record.  Tex. Civ. Prac. & Rem. Code Ann. § 134A.006(a). That section goes on to establish "a presumption in favor of granting protective orders to preserve the secrecy of trade secrets" and permits such orders to "include provisions limiting access to confidential information to only the attorneys and their experts, holding in camera hearings, sealing the records of the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval."  *Id.*  But these described protective provisions are permissive only.  *See HouseCanary, Inc. v. Title Source, Inc.*, 622 S.W.3d 254, 260 (Tex. 2021).

We do not agree that Section 134A.006 allows the trial court to implement the procedure here contrary to the Rules of Civil Procedure and the duties of the District

---

[23]We should not be understood as laying the blame for any delay solely on one party or condoning all of the litigation conduct of any one party.

Clerk set forth in the Government Code.  Even if Chapter 134A applied to American's claim, Section 134A.007(c) controls over the Rules of Civil Procedure only "[t]o the extent that [it] conflicts with" them.  Tex. Civ. Prac. & Rem. Code Ann. § 134A.007(c).  And Section 134A.006's listed permissive protective-order provisions say nothing about restricting a party's ability to obtain and have filed a timely, complete appellate record.  Accordingly, whether the trial court could look to that provision for guidance in crafting its orders does not excuse its lack of compliance with Rule 74.

### 6.  Disposition

We conclude that the trial court abused its discretion by directing the parties to email documents to the court coordinator instead of filing them via paper with the District Clerk and also by failing to comply with Rule 74 by properly marking those documents and forwarding them "forthwith" to the District Clerk.  We further conclude that American has shown that it does not have an adequate remedy by appeal.  We therefore sustain American's fifth issue and part of its sixth issue.

## C.  Motion to Compel Order

Regarding American's other, discovery-related complaints, we have carefully reviewed American's petition, Sabre's response, American's reply, Sabre's supplemental response, the mandamus record, and the documents presented to the trial court for in camera review.  Having done so, we deny relief.  *See* Tex. R. App. P. 52.8(a), (d).

24

# IV. CONCLUSION

Having determined that the trial court abused its discretion by directing the parties to email all documents to be filed to the court coordinator rather than filing them by paper under seal with the District Clerk and then by failing to comply with Rule 74 by noting the filing date and time on the so-tendered documents and transmitting them forthwith to the District Clerk, we order the trial court to vacate its verbal directive to the parties to forward all documents to be filed to its court coordinator via email. We further order the trial court—to the extent it has not already done so—to comply with Rule 74 by noting the filing date and time on the documents tendered solely to the court coordinator via email in accordance with the Email Order.[24] We direct the court coordinator of the 236th District Court—and any other trial court personnel in possession of digital or paper copies of the described items—to then forward any of those file-marked documents that have not already been forwarded according to our July 26, 2022 order in cause number

---

[24]We note that the trial court did not so file mark the documents forwarded to the District Clerk under seal for inclusion in the clerk's record in appeal cause number 02-22-00159-CV—although some, but not all, of the documents are stamped "received" with a date and the court coordinator's initials. However, those documents appear to be arranged in chronological order by date of tender. Rather than delay the appeal further—and in the absence of any pending motion seeking to have those documents properly file marked—we decline to, at this time, order the trial court to have a supplemental clerk's record filed in the appeal that contains file-marked versions of those particular documents.

02-22-00159-CV to the Tarrant County District Clerk under seal.  We deny all other relief requested by American in its petition for writ of mandamus.

/s/ Dana Womack

Dana Womack
Justice

Delivered:  September 12, 2022